LESSEE OF ROBERT GRIGNON, PETER B. GRIGNON, AND MORGAN L. MARTIN, PLAINTIFFS IN ERROR, *v.* JOHN J. ASTOR, RAMSAY CROOKS, ROBERT STUART, AND LINNS THOMPSON.

By a law of Michigan, passed in 1818, the County Courts had power, under certain circumstances, to order the sale of the real estate of a deceased person for the payment of debts and legacies.

It was for that court to decide upon the existence of the facts which gave jurisdiction: and the exercise of the jurisdiction warrants the presumption that the facts which were necessary to be proved were proved.

The distinction examined between courts of limited jurisdiction, where the record must show that jurisdiction was rightfully exercised; and courts of general jurisdiction, where the record being silent upon the subject, it will be presumed that jurisdiction existed.

A title to land becomes a legal title, when a claim is confirmed by Congress. Such confirmation is a higher evidence of title than a patent, because it is a direct grant of the fee, which had been previously in the United States.

THIS case was brought up by writ of error from the Supreme Court of the territory of Wisconsin, under the 25th section of the Judiciary act of 1789.

It was an ejectment to recover certain lands in the possession of Linns Thompson, the tenant in possession, at Green Bay, in the county of Brown and territory of Wisconsin. The plaintiffs in error were also plaintiffs below.

Both parties derived title from Pierre Grignon, deceased, who was one-eighth Indian and seven-eighths French. He died in March, 1823, leaving Robert, born in 1803, and Peter, born in 1805 or 1806, his only children by an Indian woman, to whom it was alleged he had been married. They made a conveyance of one-third of the lands to Morgan L. Martin, by deed, 15th November, 1834, who, together with the two sons of Pierre, were the lessors of the plaintiff below.

A patent was issued by the United States, on the 21st day of December, 1829, to Pierre Grignon and his heirs, reciting, that by the 3d section of the act of Congress, approved on the 21st of February, 1823, Pierre Grignon was confirmed in his claim to the tract of land containing 230 acres, bounded, &c., and granting said land accordingly.

This was the case made out for the plaintiffs in the court below.

The defendants' title was this.

Pierre Grignon died intestate in March, 1823. Letters of adminis-

tration upon his estate were granted by the judge of probate of Brown county, on the 21st June, 1824, to Paul Grignon, who applied under the laws of Michigan, to the County Court of Brown county for power to sell the real estate of the deceased. The authority was granted and the sale made, under which the title passed through Augustine Grignon, to Astor, Crooks, and Stuart, the defendants in the court below. The case turned on the validity of these proceedings, to which sundry objections were made. Before stating them, it is proper to insert so much of the law of Michigan as bears upon the various points.

*Act July* 27, 1818, sect. 1. "Be it enacted, &c., that, when the goods and chattels belonging to the estate of any person deceased, or that may hereafter decease, shall not be sufficient to answer the just debts which the deceased owed, &c., upon representation thereof, and the same being made to appear to the Supreme Judicial Court, at any term or sitting of said court, or to the County Court in the county where the deceased person last dwelt, or in the county in which the real estate lies, the said courts are severally and respectively authorized to empower and license the executors or administrators of such estate, to make sale of all or any part of the houses, lands, or tenements, of the deceased, so far as shall be necessary to satisfy the just debts which the deceased owed at the time of his death, and legacies bequeathed in and by the last will and testament of the deceased, with the incidental charges.

"And every executor or administrator being so licensed and authorized, shall and may, by virtue of such authority, make, sign, and execute in due form of law, deeds and conveyances for such houses, &c., as they shall so sell; which instrument shall make as good a title to the purchaser, his heirs and assigns for ever, as the testator or intestate, being of full age, of sane mind and memory, in his or her lifetime, might or could for a valuable consideration.

"Provided always, that the executor or administrator, before sale be made as aforesaid, give thirty days' public notice, by posting up notifications of such sale in the township where the lands lie, as well as where the deceased person last dwelt, and in the two next adjoining townships, and also in the county town of the county, &c.

"Sect. 2. Whereas, by the partial sale of real estates for the payment of debts or legacies as aforesaid, it often happens that the remainder thereof is much injured: Be it therefore enacted, &c., that whenever it shall be necessary that executors and administrators

shall be empowered to sell some part of the real estate of testators or intestates, or for guardians to sell some part of the real estate of minors or persons *non compos mentis*, for the payment of just debts, legacies, or taxes, or for the support or legal expenses of minors or persons *non compos mentis*, and by such partial sale the residue would be greatly injured, and the same shall be represented and made to appear to either of the aforesaid courts, on petition and declaration, filed and duly proved therein by the said executors, administrators, or guardians, the aforesaid courts respectively may authorize and empower such executors, administrators, or guardians, &c., to sell and convey the whole, or so much of said real estate as shall be most for the interest and benefit of the parties concerned therein, at. public auction, and good and sufficient deeds of conveyance therefor to make and execute : which deed or deeds, when duly acknowledged and recorded in the registers of deeds for the county where the said real estate lies, shall make a complete and legal title in fee to the purchaser or purchasers thereof.

"Provided the said executors, administrators, &c., give thirty days' public notice of such intended sale, in manner and form hereinbefore prescribed.

" nd provided, also, that they first give bonds, with sufficient sureties, to the judge of probate for the county where the deceased testator or intestate last dwelt and his estate was inventoried, that he or she will observe the rules and directions of law for the sale of real estate by executors or administrators ; and the proceeds of such sale, after the payment of just debts, legacies, taxes, and just debts for the support of minors, and other legal expenses and incidental charges, shall be put on interest, on good securities, and that the same shall be disposed of agreeably to the rules of law.

" Sect. 3. That every representation to be made as aforesaid, shall be accompanied with a certificate from the judge of probate of the county where the deceased person's estate was inventoried, certifying the value of the real estate and of the personal estate of such deceased person, and the amount of his or her just debts, and also his opinion whether it be necessary that the whole or a part of the estate should be sold ; and if part only, what part.

" And the said courts, previous to their passing on the said representation, shall order due notice to be given to all parties concerned, or their guardians, who do not signify their assent to such sale, to

show cause at such time and place as they shall appoint, why such license should not be granted.

"And in case any person concerned be not an inhabitant of this territory, nor have any guardian, agent, or attorney therein, who may represent him or her, the said justices may cause the said petition to be continued for a reasonable time; and the petitioners shall give personal notice of the petition to such absent person, his or her agent, attorney, or guardian, or cause the same to be published in some one of the newspapers in this territory three weeks successively.

"And the said courts, when they think it expedient, may examine the said petitioner on oath, touching the truth of facts set forth in the said petition, and the circumstances attending the same.

"Sect. 7. That real estate is and shall be liable to be taken and levied upon by any execution issuing upon judgments recovered against executors or administrators in such capacity, being the proper debts of the testator or intestate; and that the method of levying, appraising, and recording, shall be the same as by law is provided respecting other real estates levied upon and taken in execution, and may be redeemed by the executor, administrator, or heir, in like time and manner."

*Act to direct Descents*, sect. 17. "Whereas it sometimes happens, that for want of prudent management in executors, administrators, &c., who are empowered to sell real estates, such estates are disposed of below their true value, to the great injury of heirs and creditors: therefore every executor, administrator, &c., who may obtain a legal order for selling real estate, shall, previous to the sale, before the judge of probate, or some justice of the peace, take the following oath: 'I, A. B., do solemnly swear, that in disposing of the estate belonging to —— ——, now deceased, I will use my best skill and judgment in fixing on the time and place of sale, and that I will exert my utmost endeavours to dispose of the same in such manner as will produce the greatest advantage to all persons interested therein, and that without any sinister views whatever.'

"And the said executor, administrator, &c., shall return to the judge of probate a certificate of the same, under the hand of the justice before whom such oath was taken."

The defendants then called Charles C. P. Arndt as a witness, who testified that he was the judge of probate for the county of Brown, and produced the record of letters of administration granted by John Lawe, judge of probate of said county, to Paul Grignon, on the 21st

day of June, A. D. 1824, on the estate of Pierre Grignon, deceased; and also the record of the bond given by the administrator, filed and approved by the said judge of probate on the 21st day of June, 1824, which were read in evidence.

The defendants then offered to read in evidence the following extract or order from a book purporting to be the book of the minutes of the proceedings of the County Court for the county of Brown, which book, Gardner Childs, the clerk of this court, testified that he had received as the record of said County Court, viz.:

"At a session of the County Court for the county of Brown, begun and held at the township of Green Bay, in the school house, on Tuesday, the tenth day of January, one thousand eight hundred and twenty-six.

"Present: the Hon. James Porlier, chief justice, and John Lawe, Esq., associate justice. The court was opened by George Johnston, sheriff.

"The petition of Paul Grignon, administrator on the estate of Pierre Grignon, late of the county of Brown, (deceased,) was filed by his attorney, H. S. Baird, praying for an order from the court to authorize him to dispose of the real estate of said Pierre."

"In consideration of the facts alleged in said petition, and for divers other good and sufficient reasons, it is ordered that he be empowered as aforesaid."

"Minutes read, corrected, and signed by order of the court.

"Robert Irwin, Jun., *Clerk.*"

The reading of which said extract or order in evidence was objected to by the lessors of plaintiff on the ground that it does not appear that there was any petition presented to the court, nor any certificate of the judge of probate certifying as to the value of the property and the necessity of the sale; nor is there any thing to show the reasons by which the court could be invested with power to order the sale of the real estate of the intestate according to the statute; and that no notice was given to the parties concerned to show cause according to the requisites of the statute; nor does the order specify what lands of the intestate were to be sold; which objections were overruled by the court, and the said extract or order was read in evidence. To which decision the lessors of the plaintiff excepted.

The defendants then offered in evidence a bond and oath of said administrator to make sale of the real estate of the intestate according to the statute, dated and filed in the probate office of the 20th of

April, 1826, which were objected to by the lessors of the plaintiff. The objection overruled by the court, who decided that the same might be read in evidence. To which decision the lessors of the plaintiff excepted.

The defendants then introduced Henry S. Baird as a witness, who, being sworn, says, he thinks the notice of sale by the administrator was written and printed. The printed notice is in court, contained in a newspaper called the "Michigan Herald," printed at Detroit, in seven weekly numbers, commencing on the 16th of March, 1826, and ending on the 26th of April, in the same year. Defendants offered to read the notice from the papers, and to prove by parol that notice of sale was also given in writing, all which evidence was objected to by lessors of plaintiff; which objection was overruled by the court, and the testimony admitted. To which decision the lessors of the plaintiff excepted.

The witness then testified : "I cannot state that I put up any notices of sale, but that I drew the notices, I am positive. I think, I am positive, I drew five copies of the notice which has been read from the newspaper. I cannot say that they were put up in the township at this distance of time—13 years. I cannot recollect. There was, at that time, but one township in this county of Brown, and two counties in what is now the Territory of Wisconsin."

John P. Arndt was called again by the defendants, and testified that he saw a notice of sale of lands of Pierre Grignon posted up in the township, and thinks it was at his house in Green Bay, in the fore part of the season of 1826.

The foregoing testimony of the witnesses, Baird and Arndt, was objected to by lessors of the plaintiff at the time the same was offered. The objection was overruled by the court, and testimony admitted. To which decision the lessors of the plaintiff excepted.

The defendants then offered in evidence a deed from Paul Grignon, as administrator on the estate of Pierre Grignon, deceased, to Augustin Grignon, dated the 13th day of June, A. D. 1826, and recorded on the 5th of February, 1828, in the register's office of Brown county, in book B, page 34, for land, covering the land in dispute, which was objected to by the lessors of the plaintiff on the following ground, viz. :

1. No title appeared to be in Pierre Grignon, at the time of his death, or at the date of the deed, to the lands in question.

2. There was no certificate of the judge of probate, as required by

the statute, to the County Court of the necessity of the sale of said lands for the payment of debts, and the order for sale, by the County Court, was void.

3. There is no evidence on record that the property was sold, or ordered to be sold, for the payment of the debts of the intestate.

4. The sale was not advertised according to law, nor is there any record that the County Court made any order how the estate should be advertised.

5. No order was made by the County Court to show cause why the sale should not be made before granting the order.

In connection with the above deed from Paul Grignon, the defendants offered in evidence the following license, the reading of which was objected to, on the ground that it could have no greater effect than the order upon which it purported to be founded, but the court overruled the objection and permitted it to be read.

TERRITORY OF MICHIGAN, }
    *Brown county,*    } ss.

The United States of America, to Paul Grignon, administrator of Pierre Grignon, deceased:

Be it known to all to whom it may concern, that at a term of the County Court of the county of Brown, continued and held at the township of Green Bay, on Tuesday, the tenth of January, A. D. 1826, before the Hon. James Porlier, chief justice, and John Lawe, Esq., associate justice, Paul Grignon, administrator of all and singular the goods, &c. &c., lands and tenements of Pierre Grignon, deceased, late, of the county of Brown aforesaid, represents to this court, then and there in session, that the said Pierre died intestate at Green Bay, in said county of Brown, on the fourth day of March, A. D. 1823.

That at the time of his death the said Pierre was seised in his demesne as of fee, in and to the following tracts or lots of land, situated at Green Bay aforesaid, to wit:

(Here follows a description of the lands.)

And it has been ascertained by the petitioner, that the goods and chattels belonging to the estate of the said deceased are insufficient to pay all the just debts which he owed at the time of his death, but that his estate will be insolvent; and therefore prays that leave may be granted to him to dispose of the tracts and lots of land aforesaid.

Now, therefore, for the causes aforesaid, and for divers other

2 E

good and sufficient reasons, the court thereunto moving, they do hereby authorize and empower you, the said administrator, to dispose of all the right, title, and interest of the deceased, in and to the above described tracts and lots of land, in such manner as will best serve the interest of all concerned in said estate : requiring of you a due observance of the statute in such case made and provided.

WITNESS, James Porlier, chief justice of the County Court of the county of Brown, at the township of Green Bay, on the 28th of March, A. D. 1826.

ROBERT IRWIN, Jun., *Clerk, B. C.*

The counsel for the lessors of plaintiff thereupon requested the court to give the jury the following instructions, viz. :

Instruction 1st. If the jury believe from the evidence that the lessors of the plaintiff are the heirs-at-law of Pierre Grignon, or have shown a regular conveyance from the heirs-at-law to themselves of the premises in question, before the commencement of this suit ; that then the defendants can claim no title under the sale of the premises in question, made by Paul Grignon, as administrator of the estate of Pierre Grignon, by virtue of the order made by the County Court of Brown county, made on the 10th day of January, 1826 ; unless the jury are satisfied that the representation made by the said administrator to the said court to obtain the order for license of the said court for the sale of the said premises was accompanied by a certificate of the judge of probate of the county where the said deceased person's estate was inventoried, certifying the value of the real estate, and the value of the personal estate of the said deceased person, and the amount of his just debts, and also his opinion whether it be necessary that the whole or a part of the estate should be sold, and, if a part only, what part, as directed by the third section of an act entitled " An act directing the settlement of the estates of persons deceased, and for the conveyance of real estate in certain cases," as adopted by the governor and judges of the Territory of Michigan, on the 27th day of July, 1818.

Instruction 2d. That the said order or license of the said County Court, for the said sale, unless the said court had been furnished with the said certificate of the said judge of probate, is null and void as against the heirs-at-law of Pierre Grignon, who have not acquiesced in the said sale made by the administrator, under and by virtue of the said order.

To the two preceding instructions the court decided and directed the jury as follows, to wit:

"The two preceding instructions are answered, as the County Court had jurisdiction of this subject, we are bound to infer that these things were shown to said court."

Instruction 3d. That the said County Court had no power or jurisdiction to make the said order for sale, without the said certificate of the said judge of probate.

To which said instruction the said court decided and directed the jury as follows, viz.:

"The court answer that the certificate of the judge of probate was not necessary to give the court jurisdiction. It was required as evidence."

Instruction 4th. It must appear affirmatively to the jury that the said County Court at the time of the making the said order for sale of the said premises, had before them the said certificate of the said judge of probate at the time of making the said order, or granting the said license for the sale of the premises in question, or the said order for sale is void as against the heirs-at-law of Pierre Grignon, deceased, who had not acquiesced in the sale, and those claiming under them.

To which said instruction the court decided and directed the jury as follows, viz.:

"This is answered. The judgment of the County Court having jurisdiction is conclusive upon this point."

Instruction 5th. Unless it appears affirmatively to the jury that the said County Court, previous to their passing on said representation for the sale of said premises, ordered due notice to be given to all parties concerned, or their guardians, who did not signify their assent to such sale, to show cause, at such time and place as the court appoint, why such license should not be granted agreeably to the provisions of the said third section of said act in the first instruction referred to; that then the said order or license for sale was void as against the heirs of Pierre Grignon, who have not acquiesced in such sale, and the defendants can acquire no title by virtue of the sale made by the administrator, under the said order, as against the heirs-at-law of the said Pierre Grignon, deceased.

To which said instruction the court decided and directed the jury as follows, to wit:

"This is answered. We state that the County Court having jurisdiction on the subject, their judgment is conclusive."

Instruction 6th. Unless the jury believe from the evidence that the said administrator, before the sale of the said premises, gave thirty days' public notice, by posting up notifications of such sale, in the township where the lands lie, as well as where the said deceased last dwelt, and in the two next adjoining townships, or caused the printing of such notifications for three weeks successively in such gazette or newspaper as the court who authorized the sale ordered and directed, the said sale was void as against the heirs of the deceased, and those claiming under them.

To which said instruction the court decided and directed the jury as follows, to wit:

" This is a fact for the jury, and you must find that the advertisement given substantially complied with the law, or the sale is void."

Instruction 7th. That the publishing of said notice of sale in a newspaper, without the order or direction of the court who authorized the sale, was a nullity.

To which said instruction the court decided and directed the jury as follows, to wit:

" This is answered in the affirmative."

Instruction 8th. That it must appear affirmatively that the administrator, before making sale of the said premises, did literally and strictly comply with the provisions of the said statute in relation to the posting up or publishing the said notice of sale, or the said sale was void as against the heirs of Pierre Grignon, who have not acquiesced in the same.

To which said instruction the court decided and directed the jury as follows, viz. :

" A substantial compliance with the requisites of the law on this subject is sufficient."

Instruction 9th. If the jury believe from the evidence that Peter B. Grignon, one of the lessors of plaintiff, is one of the heirs-at-law of the deceased, and was a minor at the time of the making of the said order for sale, and at the time of the said sale, a guardian should have been appointed to represent him, according to law ; and if no such guardian was appointed, the said sale was void as to him and those claiming under him.

To which said instruction the court decided and directed the jury as follows, to wit:

" It was necessary and proper that, if a minor, he should be noti-

fied by guardian, but in this issue the presumption is, that he was. This is a fact that he might controvert on appeal."

Instruction 10th. Unless the defendants in this case have proven affirmatively to the jury that the administrator of the said deceased strictly complied with all the provisions of the said statute, in obtaining the order for sale, and in making the said sale, that the defendants in this suit can acquire no title to the premises in question under said sale, as against the lessors of the plaintiff, if the jury believe from the evidence that the lessors of the plaintiff are the heirs-at-law of the said Pierre Grignon, deceased, or derived title from the heirs-at-law.

To which said instruction the court decided and directed the jury as follows, to wit:

" Answer. That the court charge the jury that they are bound to consider, in this collateral issue, that the judgment or order of the County Court of Brown county, ordering the sale, was made upon sufficient and proper evidence, and that they had every thing requisite before them to authorize them to make the order for the sale, and that the judgment of that court is conclusive until reversed."

To all which foregoing decisions and answers, given by the said court to each and every of the said instructions, and for refusing to give the said instructions, respectively, as the same were asked, and to the said charge to the jury, and every part thereof, the said lessors of the said plaintiff except, and tender this bill of exceptions to the court for its signature, and bill sealed.

ANDREW G. MILLER, *Judge, &c.* [L. S.]

October 21, 1839.

*Choate,* for the plaintiffs in error.
*Crittenden* and *Lord,* for the defendants in error.

*Choate,* for the plaintiffs in error, made the following points:

1. The plaintiff contended first, and now contends, that the defendants did not offer competent proof, sufficient to show, even *primâ facie,* that the said County Court, under whose alleged order the said administrator made the sale, ever acquired jurisdiction of the matter in relation to which it was alleged to have made the order; and that, therefore, the order was a nullity.

The jurisdiction of that court depends on a law of the territory of

Michigan, made on the 27th day of July, A. D. 1818. (Laws Michigan, vol. i. p. 37.) By that law it is enacted, in section 1, that when the goods and chattels of a person deceased shall not be sufficient to pay his debts, then, "upon representation thereof, and the same being made to appear, to the Supreme Judicial Court, or to the County Court in the county where the deceased last dwelt, or where his real estate lies," the said courts are authorized to license the executor or administrator to sell his real estate, "so far as shall be necessary to satisfy the just debts of the deceased."

The same law enacts, in section 3, "that every representation made as aforesaid shall be accompanied by a certificate from the judge of probate." The contents of which certificate are particularly prescribed.

It also enacts in the same section, that "the said courts, previous to their passing on the said representation, shall order due notice to be given to all parties or their guardians, to show cause against the granting of the license. And in case any person concerned be not an inhabitant of this republic, nor have any guardian, agent, or attorney therein, who may represent him or her, the said justices may cause the said petition to be continued for a reasonable time; and the petitioner shall give personal notice of the said petition to such absent person, his agent, attorney, or guardian, or cause the same to be published in some one of the newspapers in this territory three weeks successively."

And it enacts, in the first section, in these words: "Provided always, that the executor or administrator before sale made, give thirty days' public notice, by posting up notifications of such sale in the township where the lands lie, as well as where the deceased person last dwelt, and in the two next adjoining townships, and also in the county town of the county."

To prove the jurisdiction and order of the Court of Common Pleas, the defendants offered in evidence an extract from a book purporting to be the book of the minutes of the proceedings of the said court.

To this the plaintiff objected as incompetent; and he contends that it was incompetent and inadmissible for any purpose.

1st. Because it was not such a record, nor parcel of such a record, as by the law of Michigan, passed April 21, A. D. 1825, and by the law of evidence, is competent and admissible to prove any act of a court. The 24th and 25th sections of that law are as follows:

*An act concerning the Supreme and County Courts of the territory of
Michigan, defining their jurisdiction and powers, and directing the
pleadings and practice therein in certain cases.*

Sect. 24. And be it further enacted, that for preventing errors in
entering the judgments, orders, and decrees, of the Supreme and
County Courts, the judges and justices of the said courts respectively,
before every adjournment, shall cause the minutes of their proceed-
ings during the preceding day to be publicly read by the clerk, and
corrected when necessary, and then the same shall be signed by the
presiding judge of the said court; which minutes, so signed, shall be
taken in a book, and carefully preserved among the records.

Sect. 25. And be it further enacted, that whenever any civil cause,
of whatever nature it be, shall be finally determined, the clerk of any
of said courts shall, during the next vacation, enter the warrants of
attorney, original writ or writs, declaration, pleadings, proceedings,
and judgment, in such cause, so as to make a complete record thereof,
in a separate book to be kept for that purpose, with a complete alpha-
betical index to the same; which records, after being examined and
compared with warrants of attorney, writ or writs, declaration, plead-
ings, proceedings, and judgment, and being found correct, shall, at
the next term, be signed by the presiding judge of the court.

Sect. 70. And be it further enacted, that this act shall take effect
from and after the third Monday of September next.

Approved April 21, 1825.

The said extracted passage is not signed by the presiding judge;
it is not, therefore, even legally authenticated minutes of the proceed-
ings of the court; and if it were, it is not a record, or parcel of
record, nor admissible in evidence.

2d. Because, even if it were unobjectionable in point of formal
authentication, it does not prove, nor tend to prove, that the court
have jurisdiction, or that the order was made by a court having
jurisdiction, or that it was an order relating to the lands described in
the declaration. It does not record or recite the making of a repre-
sentation by petition, or otherwise, alleging any indebtment of the
said Pierre, nor any other ground for asking or granting the license
on which the court had jurisdiction to act, as was necessary in point
of law. It does not record or recite any certificate of the judge of
probate, nor any notice to anybody, to show cause against the grant
of the license, nor does it point out which, or how much, estate is to
be sold, as was necessary in point of law.

The District Court, however, admitted this evidence; and this decision was erroneous.

And if the said extracted passage be competent and admissible evidence, the plaintiff contends, for the reasons aforesaid, that it is wholly inoperative and ineffectual, and insufficient to prove that the court had any jurisdiction to act, or that the order was the act of a court having any jurisdiction, or that it was of any legal validity or effect whatever, or communicated any authority whatever to the administrator.

The District Court decided against the proposition, and that decision was erroneous.

3d. He contends that the paper purporting to be a license, issued by the clerk of the said court, was incompetent and inadmissible as evidence; and that, if competent, it was inoperative and ineffectual, and communicated no authority to the administrator.

It is not a record, nor evidence of any fact. It is not signed by the presiding justice. It is not recorded. It is the mere act of the clerk in vacation. It presupposes and requires, as a condition of admissibility and validity, a valid order of a court having jurisdiction, of which there is no evidence.

It was not issued nor made during a session of the court, yet the District Court admitted this evidence, and declared it to be effectual and sufficient to prove jurisdiction.

This decision was erroneous.

4th. The plaintiff contends, that even if the evidence aforesaid was competent and admissible, and even if it were sufficient to show, *prima facie*, that the court ever had or began to have jurisdiction, yet that it was competent for him on the trial to encounter it by proof; that no certificate of the judge of probate was furnished to the said court; that no notice was ordered by the court, previous to the making of the alleged order of sale, to any person to show cause against the grant of the license, or that an application for leave to sell was pending; that no notice was given to, or had by either of, the heirs of said Pierre, or any one acting for them, that such application was pending; that one of the heirs was a minor at the time of the sale, and had no guardian; and that proof of these facts, or of either of them, would have disproved or put an end to, and ousted the jurisdiction of the court, and would have shown in point of law that the order of sale, and the alleged license, were wholly invalid, and ineffectual and inoperative.

But the said District Court decided, that the judgment or order of the County Court was conclusive evidence of the jurisdiction of the court, and of all proofs and things necessary to the making of the said order of sale, and is 'a valid and effectual order of sale.

This decision, the plaintiff contends, was erroneous.

5th. The plaintiff contends, that in order to give to the administrator's deed any legal validity and effect, it was necessary to prove that notice of the notifications described and required in the said 1st section of the laws of Michigan, and that the evidence to prove this of Baird's and Arndt, was incompetent and wholly insufficient for the purpose. And he contends, that the decisions of the District Court upon this matter were erroneous on several grounds.

1. In admitting incompetent proof.

2. In deciding as matter of law a mere point of evidence, to wit: that the proof aforesaid established a substantial compliance with the law, instead of declaring to the jury what the law required to have done; and then submitting the question of fact and evidence to the jury whether it had been done.

3. In refusing to instruct the jury that the administrator must literally and strictly comply with the provisions of the statute in the matter, by posting up notifications, and instructing them that a substantial compliance with the requests of the law was sufficient, without instructing them what acts would constitute a substantial compliance therewith.

6th. The plaintiff contended at the trial, and contends here, that the lands claimed in the action could not legally be sold by the administrator under any order or judgment of any court, as the real estate of Pierre Grignon, for the payment of his debts. And that the patent passes a perfect title to plaintiff's lessors.

The law of Michigan above referred to, and in part set forth, authorizes the sale of the "houses, lands or tenements, of the deceased." The estate in question was not such. The title of Pierre Grignon at his death, if any, was equitable only, resting on the pleasure or justice of government, and could not be taken in execution or sold for his debts. The patent of 21st December, 1829, vested the title directly in the heirs. But the District Court decided otherwise.

7th. The plaintiff contends that if the license has any effect, it proves that the administrator represented that the said Pierre was seised, at the time of his death, as in his demesne, as of fee of the

estate claimed in the action; that the said representation was untrue; that the order of sale was founded in part upon that representation, and affirms it; and is for that cause erroneous and invalid, and does not support the administrator's deed.

*Lord* and *Crittenden,* for the defendants in error, made the following points:

1. By the act of Michigan, of July 27, 1818, the County Court of Brown county had jurisdiction to order the sale of the lands of an intestate for payment of debts, whenever the goods and chattels should not be sufficient to answer the same: and such jurisdiction was to be exercised upon representation of such insufficiency, and the same being made to appear to the County Court.

2. The court thus having jurisdiction, the want of evidence, however necessary and essential that evidence, to warrant its order, was merely error: and it cannot be shown by strangers to the order, to overturn the title of a purchaser. The order cannot be impeached collaterally.

3. The license, which is the order exemplified for the purchaser's protection, and the minutes, show every fact on which the jurisdiction of the court rests, and show such an order as the court was by law authorized to make.

4. The jurisdiction being shown, not only is the order unimpeachable collaterally for errors in making it, but every proper requisite to the act of jurisdiction is to be presumed as a conclusion of law; and it is to be presumed, in every collateral suit, that there was no error or irregularity; no want of citation, notice or evidence.

5. There is no express saving of the rights of infants. The statute authorizes the sale as a proceeding *in rem.* The lands were liable to be sold under judgments recovered against the administrator for the intestate's debt, so that the sale by the administrator was merely a conversion from real to personal estate; in reference to the sale of which, in either mode, he was accountable. There is, therefore, no ground to impeach the order, on the supposition that infants were interested, and were not notified, even if such supposition was not precluded by the presumption of law.

6. The acts *in pais,* after the order of sale, were left by the court to be found by the jury, considering all the evidence. Such acts could not be required to be established, at the distance of thirteen years, except by showing a substantial compliance with the law.

A substantial compliance is all which is at any time necessary in carrying out a sale by order of a court.

7. The plaintiff did not attempt by any evidence directly to impeach the proceedings, by showing want of notice, want of evidence, want of strict conformity to law, although Paul Grignon, the administrator, and Augustine Grignon, the purchaser, had both united to defeat the sale under the order by a subsequent conveyance, and were both produced as witnesses for the plaintiff. The plaintiff must therefore fail if the order and license are evidence at all, although not conclusive: as a presumption subject to contradiction, it must be taken against the plaintiff, who might contradict it if false, and does not.

8. The interest of Pierre Grignon in these lands, at the time of his death, was an interest existing at the date of the act of Congress of February 21, 1823, and so liable to be sold by his administrator, as goods, chattels, lands, or tenements. The purchaser, by the administrator's sale, acquired as good a title as the intestate could in his lifetime convey for a valuable consideration.

The patent issued after his death enured to the benefit of his assigns, the defendants deriving their title under him.

Numerous authorities were cited by the counsel upon each side, in support of their respective points: but the reporter was necessarily absent during the argument of the cause, and is therefore unable to cite them.

Mr. Justice BALDWIN delivered the opinion of the court.

This case comes here on a writ of error from the Supreme Court of the Territory of Wisconsin, the premises in controversy were formerly owned by one Peter Grignon, to whom they were confirmed by an act of Congress, passed 21st February, 1823, to be found in 3 Story's Laws, 1877. He died in March following, intestate, indebted, and leaving two sons who are lessors of the plaintiff, one born in 1803, the other in 1806. They conveyed one-third to Martin, the other lessor, in 1834. The lessors claim as heirs-at-law of Peter Grignon, and the conveyance from them to Martin.

In 1824, letters of administration on the estate of Peter Grignon were duly granted to Paul Grignon, the brother of the deceased, who gave bond for the performance of the trust, according to law. In January, 1826, he presented his petition to the County Court of Brown county, then in the Territory of Michigan, praying for an

order from the court, to authorize him to dispose of the real estate of the said Peter, which was granted, a license issued to the administrator to sell in March, 1826. A sale was accordingly made to Augustin Grignon, to whom a deed was executed by the administrator in June, 1826, and duly recorded. The defendants claim title under this sale, by sundry mesne conveyances from the purchaser.

The law of Michigan is set forth in the statement of the case by the reporter.

In the County Court the following proceedings were had:

"At a session of the County Court for the county of Brown, begun and held at the township of Green Bay, in the school-house, on Tuesday, the tenth day of January, one thousand eight hundred and twenty-six.

"Present: the Hon. James Porlier, chief justice, and John Lawe, Esq., associate justice. The court was opened by George Johnston, sheriff.

"The petition of Paul Grignon, administrator on the estate of Pierre Grignon, late of the county of Brown, (deceased,) was filed by his attorney, H. S. Baird, praying for an order from the court to authorize him to dispose of the real estate of said Pierre.

"In consideration of the facts alleged in said petition, and for divers other good and sufficient reasons, it is ordered that he be empowered as aforesaid.

"Minutes read, corrected, and signed by order of the court.

ROBERT IRWIN, Jun., *Clerk*."

TERRITORY OF MICHIGAN, ⎱
    *Brown county,*    ⎰ ss.

The United States of America, to Paul Grignon, administrator of Pierre Grignon, deceased.

Be it known, to all whom it may concern, that at a term of the County Court of the county of Brown, continued and held at the township of Green Bay, in said county, on Tuesday, the tenth day of January, in the year of our Lord, one thousand eight hundred and twenty-six, before the Hon. James Porlier, chief justice, and John Lawe, Esq., associate justice, Paul Grignon, administrator of all and singular the goods and chattels, rights and credits, lands and tenements of Pierre Grignon, deceased, late of the county of Brown aforesaid, represents to this court, then and there in session, that the said Pierre died intestate, at Green Bay, in said county of Brown, on the fourth day of March, A. D. 1823; that at the time of his death,

the said Pierre was seised in his demesne as of fee in and to the following tracts or lots of land, situated at Green Bay aforesaid, to wit:

Lot number three, on the east side of Fox river, bounded north by land claimed by the estate of Dometile Longevin, south by Augustin Grignon, and four-and-a-half arpens in front, and eighty arpens rear.

Also, lot number five, on the same side of said river, bounded north by Augustin Grignon's claim, and south by land claimed and occupied by John Lawe, Esq., being four acres and sixteen feet wide, and extending back eighty acres.

Also, lot number three, in dispute between said deceased and George Johnston, on the west side of said Fox river, lately occupied by said George Johnston, bounded north by Louis Grignon, and south by land of said deceased, being eight chains and sixty-two links wide, and eighty arpens deep.

Also, lot number four, on the same side of said river, bounded north by the last mentioned claim, and south by land claimed by John Lawe, Esq., being eight chains and fifty links wide, and extending back eighty arpens.

And that it has been ascertained by the petitioner that the goods and chattels belonging to the estate of the said deceased are insufficient to pay all the just debts which he owed at the time of his death, but that the estate will be insolvent; and therefore prays that leave may be granted him to dispose of the tracts and lots of land aforesaid. Now, therefore, for the causes aforesaid, and for divers other good and sufficient reasons, the court thereunto moving, they do hereby authorize and empower you the said administrator, to dispose of all the right, title, and interest of the deceased in and to the above described tracts and lots of land in such manner as will best serve the interest of all concerned in said estate, requiring of you a due observance of the statute in such case made and provided.

WITNESS, James Porlier, chief justice of the County Court of the county of Brown, at the township of Green Bay, on the 28th of March, A. D. 1826.

ROBERT IRWIN, Jun., *Clerk B C.*

At the trial numerous questions of evidence arose, and many instructions were asked of the court, to whose opinion the plaintiffs excepted; but we do not deem it necessary to notice them in detail, as in our opinion the whole merits of the controversy depend on one

single question, had the County Court of Brown county jurisdiction of the subject on which they acted?

Jurisdiction has been thus defined by this court.

"The power to hear and determine a cause is jurisdiction; it is *coram judice* whenever a case is presented which brings this power into action; if the petitioner presents such a case in his petition, that on a demurrer the court would render a judgment in his favour, it is an undoubted case of jurisdiction; whether on an answer denying and putting in issue the allegations of the petition, the petitioner makes out his case, is the exercise of jurisdiction, conferred by the filing a petition containing all the requisites, and in the manner required by law." 6 Peters, 709. "Any movement by a court is necessarily the exercise of jurisdiction; so, to exercise any judicial power over the subject-matter and the parties, the question is whether, on the case before a court, their action is judicial, or extra-judicial, with, or without the authority of law, to render a judgment or decree upon the rights of the litigant parties. If the law confers the power to render a judgment or decree, then the court has jurisdiction, what shall be adjudged or decreed between the parties, and with which is the right of the case, is judicial action by hearing and determining it." 12 Peters, 718; S. P. 3 Peters, 205. It is a case of judicial cognisance, and the proceedings are judicial. 12 Peters, 623.

This is the line which denotes jurisdiction and its exercise, in cases *in personam*, where there are adverse parties, the court must have power over the subject-matter and the parties; but on a proceeding to sell the real estate of an indebted intestate, there are no adversary parties, the proceeding is *in rem*, the administrator represents the land, (11 S. and R. 432;) they are analogous to proceedings in the admiralty, where the only question of jurisdiction is the power of the court over the thing, the subject-matter before them, without regard to the persons who may have an interest in it; all the world are parties. In the Orphans' Court, and all courts who have power to sell the estates of intestates, their action operates on the estate, not on the heirs of the intestate, a purchaser claims not their title, but one paramount. 11 S. and R. 426. The estate passes to him by operation of law. 11 S. and R. 428. The sale is a proceeding *in rem*, to which all claiming under the intestate are parties, (11 S. and R. 429,) which directs the title of the deceased. 11 S. and R. 430.

As the jurisdiction of such courts is irrespective of the parties in

Grignon's Lessee v. Astor et al.

interest, our inquiry in this case is whether the County Court of Brown county had power to act in the estate of Peter Grignon, on the petition of the administrator under the law of Michigan, providing, that where the goods and chattels of a decedent are not sufficient to answer his just debts, on representation thereof, and the same being made to appear to the County Court where he dwelt, or where his real estate lies, it may license the executor or administrator to make sale of so much as will satisfy the debts and legacies.

No other requisites to the jurisdiction of the County Court are prescribed than the death of Grignon, the insufficiency of his personal estate to pay his debts, and a representation thereof to the County Court where he dwelt or his real estate was situate, making these facts appear to the court. Their decision was the exercise of jurisdiction, which was conferred by the representation; for whenever that was before the court, they must hear and determine whether it was true or not ; it was a subject on which there might be judicial action. The record of the County Court shows that there was a petition representing some facts by the administrator, who prayed an order of sale ; that the court took those facts which were alleged in the petition into consideration, and for these and divers other good reasons ordered that he be empowered to sell.  It did then appear to the court that there were facts and reasons before them which brought their power into action, and that it was exercised by granting the prayer of the petitioner, and the decree of the court does not specify the facts and reasons, or refer to the evidence on which they were made to appear to the judicial eye ; they must have been, and the law presumes that they were such as to justify their action. 14 Peters, 458. But though the order of the court sets forth no facts on which it was founded, the license to the administrator is full and explicit, showing what was considered and adjudicated on the petition and evidence, and that every requisition of the law had been complied with before the order was made, by proof of the existence of all the facts on which the power to make it depended. 3 Peters, 202.; 2 Peters, 165. We all know that even in the old states, the records of these and similar proceedings are very imperfectly kept, that where it consists of separate pieces of paper, they are often mislaid or lost by the carelessness of clerks and their frequent changes ; regular entries of the proceedings are not entered on the docket as in adversary cases, nor are the facts set forth in the petition entered at large ; and it is no matter of surprise that in so new and remote part of the country as

the place where these proceedings were had, this state of things should exist. Nor is it necessary that a full or perfect account should appear in the records of the contents of papers on files, or ine judgment of the court on matters preliminary to a final order; it is enough that there be something of record which shows the subject-matter before the court, and their action upon it, that their judicial power arose and was exercised by a definitive order, sentence, or decree. 2 Peters, 165. The petition in the present case called for a decision of the court that the facts represented did or did not appear to them to be sufficiently proved; they decided that they did so appear, whereby their power was exercised by the authority of the law, and it became their duty to order the sale, unless in a case under the 3d section. The subsequent provisions of the act of Michigan relate exclusively to acts and proceedings in the execution of the order of sale or are directory to the administrator to accompany the representation with a certificate of the judge of probate, and to the court, before passing on such representation, to order notice to be given to the parties concerned, to show cause why the license should not be granted; but these provisions do not affect the jurisdiction of the court, they apply only to its exercise. After the court has passed on the representation of the administrator, the law presumes that it was accompanied by the certificate of the judge of probate, as that was a requisite to the action of the court; their order of sale is evidence of that or any fact which was necessary to give them power to make it, and the same remark applies to the order to give notice to the parties. This is a familiar principle in ordinary adversary actions, in which it is presumed after verdict, that the plaintiff has proved every fact which is indispensable to his recovery, though no evidence appears on the record to show it; and the principle is of more universal application in proceedings *in rem* after a final decree by a court of competent jurisdiction over the subject-matter.

The granting the license to sell is an adjudication upon all the facts necessary to give jurisdiction, and whether they existed or not is wholly immaterial, if no appeal is taken; the rule is the same whether the law gives an appeal or not; if none is given from the final decree, it is conclusive on all whom it concerns. The record is absolute verity, to contradict which there can be no averment or evidence; the court having power to make the decree, it can be impeached only by fraud in the party who obtains it. 6 Peters, 729. A purchaser under it is not bound to look beyond the decree; if there is error in it, of the

Grignon's Lessee *v.* Astor et al.

most palpable kind, if the court which rendered it have, in the exercise of jurisdiction, disregarded, misconstrued, or disobeyed the plain provisions of the law which gave them the power to hear and determine the case before them, the title of a purchaser is as much protected as if the adjudication would stand the test of a writ of error; so where an appeal is given but not taken in the time prescribed by law. These principles are settled as to all courts of record which have an original general jurisdiction over any particular subjects; they are not courts of special or limited jurisdiction, they are not inferior courts, in the technical sense of the term, because an appeal lies from their decisions. That applies to "courts of special and limited jurisdiction, which are created on such principles that their judgments, taken alone, are entirely disregarded, and the proceedings must show their jurisdiction;" that of the courts of the United States is limited and special, and their proceedings are reversible on error, but are not nullities, which may be entirely disregarded. 3 Peters, 205. They have power to render final judgments and decrees which bind the persons and things before them conclusively, in criminal as well as civil causes, unless revised on error or by appeal. The true line of distinction between courts whose decisions are conclusive if not removed to an appellate court, and those whose proceedings are nullities if their jurisdiction does not appear on their face, is this: a court which is competent by its constitution to decide on its own jurisdiction, and to exercise it to a final judgment, without setting forth in their proceedings the facts and evidence on which it is rendered, whose record is absolute verity, not to be impugned by averment or proof to the contrary, is of the first description; there can be no judicial inspection behind the judgment save by appellate power. A court which is so constituted that its judgment can be looked through for the facts and evidence which are necessary to sustain it; whose decision is not evidence of itself to show jurisdiction and its lawful exercise, is of the latter description; every requisite for either must appear on the face of their proceedings, or they are nullities. The Circuit Court of this district has original, exclusive, and final jurisdiction in criminal cases, its judgment is a sufficient cause on a return to a writ of *habeas corpus;* "on this writ this court cannot look behind the judgment and re-examine the charges on which it was rendered. A judgment in its nature concludes the subject in which it is rendered, and pronounces the law of the case. The judgment of a court of record, whose jurisdiction is final, is as conclusive on

all the world as the judgment of this court would be. It is as conclusive in this court as it is on other courts. It puts an end to all inquiry into the fact by deciding it." 3 Peters, 204, 205.

"To determine whether the offence charged in the indictment be legally punishable or not, is among the most unquestionable of its (the Circuit Court) powers and duties; the decision of the question is the exercise of jurisdiction, whether the judgment be for or against the prisoner, it is equally binding and remains in full force until reversed." 3 Peters, 204, 205.

If the jurisdiction of the court in a civil case is not alleged in the "pleadings, the judgment is not a nullity, but though erroneous, is obligatory as one, (3 Peters, 206,) and in a proceeding *in rem*, an erroneous judgment binds the property on which it acts, it will not bind it the less because the error is apparent, and the judgment is of complete obligation." 3 Peters, 207. The judgment of the Circuit Court, in a criminal case, " is of itself evidence of its own legality, and requires for its support no inspection of the indictments on which it is founded. The law trusts that court with the whole subject, and has not confided to this court the power of revising its decision." 3 Peters, 207.

These principles have been applied by this court to sales made under the decrees of Orphans' Courts: where they have power to judge of a matter of fact, " they are not required to enter on record the evidence on which they decided that fact. And how can we now say but that the court had satisfactory evidence before it, that one of the heirs was of age? If it was so stated in terms on the face of the proceedings, and even if the jurisdiction of the court depended on that fact; it is by no means clear, that it would be permitted to contradict it, on a direct proceeding to reverse any order or decree made by the court. But to permit that fact to be drawn in question in this collateral way, is certainly not warranted by any principle of law." 2 Peters, 165, Thompson *v.* Tolmie.

" If the purchaser (under a decree of the Orphans' Court) was responsible for their mistakes in point of fact, after they had adjudicated upon the facts, and acted upon them, those sales would be snares for honest men." 2 Peters, 169, cited 11 S. and R. 429.

" The purchaser is not bound to look farther back than the order of the court. He is not to see whether the court were mistaken in the facts of debts and children. The decree of an Orphans' Court in a case within its jurisdiction is reversible only on appeal, and not

collaterally in another suit. A title under a license to the administrator to sell real estate, " is good against the heirs of the intestate, although the license was granted upon the certificate of the judge of probate, not warranted by the circumstance of the case."

" The license was granted by a court having jurisdiction of the subject: if it was improvidently exercised, or in a manner not warranted by the evidence from the probate courts; yet it is not to be corrected at the expense of the purchaser, who had a right to rely upon the order of the court, as an authority emanating from a court of competent jurisdiction." 2 Peters, 169, and 11 Mass. 227, cited.

In that case the jurisdiction of the court was held to attach, " when the acceptor dies intestate, and any of the persons entitled to his estate is a minor, (2 Peters, 165;) so in this case it attaches on the decease of any person indebted beyond the personal estate he leaves, and when jurisdiction is once attached to a subject, or exists over a person, this court has adopted as a rule applicable to all courts of records that their decisions are conclusive; " it has a right to decide every question which occurs in a cause, and whether its decision be correct or otherwise, its judgment, until reversed, is binding on every other court." 1 Peters, 340. In Voorhees *v.* The Bank of the United States the same principle is applied to sales or executions under judgments on adversary process, and such must hereafter be taken to be the established law of judicial sales, as well relating to those made in proceedings *in rem,* as *in personam.* 10 Peters, 473.

We do not deem it necessary, now or hereafter, to retrace the reasons or the authorities on which the decisions of this court in that, or the cases which preceded it, rested ; they are founded on the oldest and most sacred principles of the common law. Time has consecrated them ; the courts of the states have followed, and this court has never departed from them. They are rules of property, on which the repose of the country depends ; titles acquired under the proceedings of courts of competent jurisdiction must be deemed inviolable in collateral action, or none can know what is his own ; and there are no judicial sales around which greater sanctity ought to be placed, than those made of the estates of decedents, by order of those courts to whom the laws of the states confide full jurisdiction over the subjects.

These sales are less expensive than when made on executions ; more time is allowed to make them ; the discretion of the court is exercised as to time, manner, and the terms of sale ; whereas on sales

by a sheriff, all is by compulsion and no credit is allowed; he cannot offer one entire piece of property for sale in parcels; the administrator can divide and sell as best subserves the interest of the heirs, and sell only so much as the emergency of the case requires.

It has been contended by the plaintiff's counsel, that the sale in the present case is not valid, because Peter Grignon had not such an estate in the premises as could be sold under the order of the County Court, it being only an equitable one before the patent issued in 1829; but the title became a legal one by its confirmation by the act of Congress of February, 1823, which was equivalent to a patent. It was a higher evidence of title, as it was the direct grant of the fee which had been in the United States by the government itself, whereas the patent was only the act of its ministerial officers.

These views of this case decide it, without examining the exceptions to the admission of evidence, the ruling of the court on the instruction prayed, or their charge to the jury. So far as either were unfavourable to the plaintiff, they are most fully sustained by the foregoing principles and cases; the County Court of Brown county had undoubted jurisdiction of the subject; their proceedings are irreversible; the title of the purchaser cannot be questioned; and the judgment of the court below must be affirmed with costs.

### ORDER.

This cause came on to be heard on the transcript of the record from the Supreme Court of the Territory of Wisconsin, and was argued by counsel. On consideration whereof, It is now here ordered and adjudged by this court, that the judgment of the said Supreme Court of the Territory of Wisconsin in this cause be, and the same is hereby affirmed with costs.