## NORTHERN PAC. R. CO. *v.* WRIGHT, County Treasurer.

*(Circuit Court, D. Montana.　June 13, 1892.)*

1. PUBLIC LANDS—RAILROAD GRANTS—STATE TAXATION.
    The grant of lands to the Northern Pacific Railroad Company, under Act July 2, 1864, was a present grant, which attached to the specific sections as they became capable of identification by the definite location of the road; and, upon a report by the government surveyors that the lands surveyed are nonmineral, such lands become subject to state taxation, although the land commissioner refuses to issue patents therefor until further satisfied that the lands are in fact nonmineral. *Northern Pac. R. Co.* v. *Walker*, 47 Fed. Rep. 681, followed.
2. SAME—NONMINERAL LANDS—LAND COMMISSIONER'S DECISION.
    Since the determination of the mineral or nonmineral character of such lands must be upon evidence extrinsic of any terms of the grant, it is not necessary that the land commissioner shall pass upon the question, before it can be judicially determined whether certain sections are reserved by the grant because of their mineral character.

In Equity. Bill by the Northern Pacific Railroad Company against F. E. Wright, treasurer of Fergus county, Mont., to enjoin the collection of taxes. Heard on demurrer to the bill. Demurrer sustained.

*Cullen, Sanders & Shelton,* (*F. M. Dudley* and *J. B. McNamee,* of counsel,) for complainant.

*Henri J. Haskell,* for defendant.

KNOWLES, District Judge. This is a suit brought by plaintiff to enjoin defendant, as treasurer of Fergus county, Mont., from selling certain

lands claimed by plaintiff to belong to it as part of its grant from the United States, in default of the payment of the taxes assessed thereon. The ground for the injunction is that such sale would cast a cloud upon plaintiff's title to the same. The bill shows that the lands are odd sections within the limits of plaintiff's grant, and were public lands, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights, at the time the line of plaintiff's railroad was definitely fixed, and a plat thereof filed in the office of the commissioner of the general land office. The bill shows that the railroad of plaintiff has been completed and accepted, but that the commissioner of the general land office of the United States has refused to issue to plaintiff patents for said lands, as required by the fourth section of the act of congress making the grant of land to plaintiff. The reason assigned is because plaintiff has failed and refused to file with such commissioner of the general land office affidavits showing the nonmineral character of said land. It further appears that the question as to whether or not said lands passed to plaintiff is in controversy, and the same is now pending and undecided before said commissioner. The bill also sets forth "that said lands have been surveyed by United States surveyors, and have been reported by said surveyors to be nonmineral lands, and agricultural in character; that said lands were not, July 2, 1864, or July 6, 1882, known mineral lands, and no mineral, other than coal and iron, has been discovered upon said lands;" and, further, "that the lands granted to your orator [plaintiff] in the state of Montana have never been segregated from the public lands, and have never been identified, and the boundaries of the specific lands in said state granted to your orator as aforesaid have never been ascertained or determined, except as herein stated." The contention on the part of plaintiff is that, as it has never been awarded a patent by the commissioner of the general land office therefore the said lands have not been segregated from the mass of public lands, and have never been identified; that a patent to said lands is necessary to accomplish this result. The position assumed is that it cannot be determined whether or not these lands are nonmineral, and passed to plaintiff with their grant, until the land department of the United States determines their character, and, if agricultural, issues to it a patent therefor; that it ought not be called upon to pay the taxes on said land until it is fully determined that it owns the same; that something remains to be done by the United States through its land officers before this determination is fully reached. I do not believe this contention can be maintained. The grant to plaintiff is of a legal title, and the lands are identified by the terms of the grant. They are "nonmineral public lands," of which the United States have full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights, at the time the line of said road is definitely fixed, and a plat thereof filed in the office of the commissioner of the general land office; "and through the territories the lands are 20 sections, designated by odd numbers, on each side of the road as definitely fixed." In the case of *Railway Co.* v. *Dunmeyer*, 113

U. S. 629, 5 Sup. Ct. Rep. 566, the supreme court held that the filing of the map of definite location of the railroad determined and fixed the lands granted the railroad company by act of congress. The grant under consideration in that case was similar in terms to that of the grant to plaintiff. The conclusion reached in the case of *Northern Pac. R. Co.* v. *Trail Co.*, 115 U. S. 600, 6 Sup. Ct. Rep. 201, as to the nature of the title held by the Northern Pacific Railroad Company to the land granted to it by the act of congress, must be considered as superseded by the rule concerning the same announced in *Buttz* v. *Railroad Co.*, 119 U. S. 55, 7 Sup. Ct. Rep. 100; *Wisconsin Cent. R. Co.* v. *Price Co.*, 133 U. S. 496, 10 Sup. Ct. Rep. 341; and in *St. Paul & P. R. Co.* v. *Northern Pac. R. Co.*, 139 U. S. 1, 11 Sup. Ct. Rep. 389. In the second of these cases the supreme court said of a grant similar in terms to the one under consideration:

"The title conferred by the grant was necessarily an imperfect one, because, until the lands were identified by the definite location of the road, it could not be known what specific lands would be embraced in the sections named. The grant was therefore, until such location, a float; but when the route of the road was definitely fixed the sections granted became susceptible of identification, and the title attached to them, and took effect as of the date of the grant, so as to cut off all intervening claims."

Again, in speaking of the effect of a patent, the court said:

"The subsequent issue of the patents by the United States was not essential to the right of the company to those parcels, although in many respects they would have been of great service to it."

In the last of the above cases the very grant for consideration here was again considered, and the supreme court said, of the terms in the third section of that grant: "The words also import a transfer of a present title, not a promise to transfer one in future;" and said of the patent to such granted lands, "The previous grant or confirmation is in no respect impaired thereby or its construction affected." In this case it was asserted that the patent of such lands was not that by which the lands were granted, but only a confirmation of the title which had been granted by the act of congress to the same; that the patent was evidence that the terms of the grant had been complied with. I think it may be asserted safely that, under these recent decisions, plaintiff received a present legal title to the land embraced in its grant, and that said land became identified when the definite route of plaintiff's road was definitely fixed, and a plat thereof filed in the office of the commissioner of the general land office; that is, they were then capable of being identified by evidence. The terms of the grant would preclude the idea that these lands were to be identified by the commissioners of the general land office. The fourth section of the act making the grant to plaintiff provides for the appointment of commissioners to examine each consecutive 25 miles of plaintiff's railroad when built, and make a report to the president, and, "if it appears that such section of road as the commissioners may report on have been completed in a good, substantial, and workmanlike manner," "patents of land, as aforesaid, shall be issued to said company,

confirming to said company the right and title to said lands situate opposite to, and coterminous with, said completed section of said road."

What are the said lands aforesaid? The lands granted to plaintiff. It is true the lands are to be nonmineral, and, as far as the United States is concerned, the commissioner of the general land office is called upon to determine their character when issuing a patent, and in the absence of mistake or fraud, the United States, and those claiming under the same, would be bound by this determination. But would plaintiff be bound thereby? Plaintiff has received title to its lands by virtue of an act of congress. An act of congress making a direct grant of lands is better evidence of title than a patent. *Grignon's Lessees* v. *Astor*, 2 How. 319; *Langdeau* v. *Hanes*, 21 Wall. 521.

The plaintiff stands clothed with a title equal, if not superior, to a title granted by patent. Suppose the commissioner of the general land office should decide that a given piece of land was mineral, and hence not granted to plaintiff, would this be an adjudication of, and a determination of, plaintiff's rights to that land? I am satisfied it would not. In the case of *Mining Co.* v. *Campbell*, 135 U. S. 286, 10 Sup. Ct. Rep. 765, the supreme court said:

"Where each party has a patent from the government, and the question is as to the superiority of the title under these patents, if this depends upon extrinsic facts not shown by the patents themselves, we think it is competent in any judicial proceedings, when this question of superiority of title arises, to establish it by proof of these facts. We do not think that the government of the United States, having issued a patent, can, by the authority of its own officers, invalidate that patent by the issuing of a second one for the same property."

So, I might say, I do not think where the government of the United States, having made a grant of certain lands to plaintiff, can, by the authority of its own officers, invalidate that grant by the issuing of a patent therefor to a party not named in the grant. In the case of *Davis* v. *Wiebbold*, 139 U. S. 507, 11 Sup. Ct. Rep. 628, the supreme court held that, where two parties had obtained patents to the same piece of ground, evidence could be introduced to show that the land was not mineral at the time of the application for a patent to the probate judge in trust for the same as a town site, and that it was not mineral at the time of the trial. The claimant under the mineral patent in that case claimed that the patent to him was a conclusive presumption that the land was mineral, but the supreme court held that, where both parties held patents, the facts could be shown. And this is certainly in accordance with the functions pertaining to the commissioner of the general land office. When a party has received title to land, the commissioner is not called upon to determine whether that is a valid title or not. If so, then there would be no necessity of suits on the part of the general government to set aside patents obtained by his action. In the case of *U. S.* v. *Stone*, 2 Wall. 525, the supreme court said: "But one officer of the land office is not competent to cancel or annul the acts of his predecessor. That is a judicial act, and requires the judgment of a

court." In the case of *U. S. v. Minor*, 114 U. S. 233, 5 Sup. Ct. Rep. 836, the supreme court pointed out that generally the action of the land department, in its full sense, must not be considered judicial. If a man has received title to land, he cannot be deprived of this by any *ex parte* proceeding in the land office. How, then, is the fact that land is mineral or nonmineral to be determined? I answer, by proof of the facts as to its character. Plaintiff has in several cases brought actions to recover possession of land, and for trespass upon land within its grant for which, at the time of the commencement of the action, it had received no patent. The case of *Buttz* v. *Railroad Co.*, *supra*, appears to have been a case of this character. If plaintiff's lands cannot be considered identified until the commissioner of the general land office determines the question as to whether the land is mineral or not, I do not see how plaintiff can maintain either an action at law or a suit in equity in regard thereto. What judgment would plaintiff be entitled to in any case in regard to lands which have not been identified as its lands? If the matter of the identification of plaintiff's lands is to be left entirely to the commissioner of the general land office, a court has no right to proceed by evidence to identify such lands. A patent, under such a condition of affairs, is something more than a confirmation of a previous grant,—something more than the evidence that the terms of the grant have been complied with by plaintiff. It is the only means of the identification of the lands specified in the grant. Holding, then, as I do, that the question as to whether the lands named in plaintiff's bill are those granted to it can be established by evidence, I cannot find that plaintiff has shown any ground for any equitable relief in this case. If plaintiff can show that certain lands are those embraced in its grant, by evidence other than a patent, then the assessor and treasurer of Fergus county have the means of determining whether any given piece of land belongs to plaintiff in the same way. If the lands mentioned in plaintiff's bill are its lands, no ground for equitable relief is presented. If they are not plaintiff's lands, the appeal to this court is unavailing. The case of *Northern Pac. R. Co.* v. *Walker Co.*, 47 Fed. Rep. 681, is one which in many particulars is identical with this. The learned court in that case denied the prayer of complainant for an injunction restraining the collection of a tax, levied upon certain lands embraced in plaintiff's grant, by the authority of the laws of North Dakota. The decision in that case was based largely upon the view that, as the bill showed that the land was not known to be mineral land at the date of the definite location of plaintiff's road, it passed to plaintiff in its grant of land. This view was supported by the decision of Judge SAWYER, in the case of *Railroad Co.* v. *Barden*, 46 Fed. Rep. 592. I do not think it necessary to base the ruling of this court in this case upon anything decided in that case, or insert, into the act making a grant of lands to plaintiff, terms and language not found in said act of congress, which would, in my judgment, materially enlarge the extent of the grant, and violate what I believe to be the established rules of the supreme court in construing such grants; but rather upon

the ground that the question as to whether the lands named in the bill are of the character and description embraced in plaintiff's grant are facts to be determined by the evidence in any given case. If the question were as to whether the land named in the bill was known to be mineral or not, at the time of the definite location of plaintiff's railroad, this, it appears to me, would have to be supported by evidence extrinsic of any terms in the grant. I know of no means possessed by the land department for determining this fact. And it is certain that the distinguished judge who decided the case of *Northern Pac. R. Co.* v. *Walker*, *supra*, did not think it was necessary for the commissioner of the general land office to determine this fact before it could be ascertained whether the land belonged to plaintiff or not. For the reasons assigned the demurrer to the bill is sustained, and the temporary restraining order heretofore issued herein is dissolved.