HOLMES, Adm'r, etc., *v.* OREGON & CALIFORNIA R. Co.

*(Circuit Court, D. Oregon.* October 20, 1881.)

1. JUDGMENTS—COLLATERAL ATTACK.

The general rule, in the language of the court, is that a question of fact once determined and adjudged, by a court having authority to make the inquiry and adjudication, is conclusively determined, unless the judgment is set aside on appeal to some higher court, or upon some direct proceeding within the recognized rules of law to annul it. Hence, where the statute of the state provided that the administration of the estate of an intestate shall be granted by the county court when the intestate, "at or immediately before his death, was an inhabitant of the county," etc., the decision of the court on the question of inhabitancy, properly presented for its adjudication, is not open to examination in a subsequent proceeding in a federal court.

*Sidney Dell,* for libellant.

*Dolph, Bronaugh, Dolph,* and *Simon,* for defendants.

SAWYER, C. J. On petition for rehearing. This is an appeal from a decree of the district court, in a suit to recover the sum of $4,900, under section 367 of the Oregon Civil Code, on account of the death of William A. Perkins, which occurred on November 16, 1878, and which is alleged to have been caused by the negligence of the defendant while transporting said Perkins across the Wallamet river, at Portland, on its steam-ferry.

On the day named the deceased, then in his twenty-second year, in company with his mother, Mary A. Riggs, left Salem, Oregon, for Portland, in the same state, intending to take the steamer at the latter place for California. In crossing the Wallamet river, on defendant's ferry, while landing at Portland, in Multnomah county, he fell overboard and was drowned. Soon after, said Mary A. Riggs, mother of the deceased, who was the next of kin and one of his heirs at law, and entitled to letters of administration under the laws of Oregon, (Or. Code, § 1053,) filed a verified petition in the county court of Multnomah county, in which she styled herself Mary A. Riggs, of the city of Portland, and alleged that William A. Perkins died on November 16, 1878, in said Multnomah county and state of Oregon; "that deceased was, at or im-

mediately before his death, an inhabitant of said county;" that he left as assets the claim now sued upon, and no other property; that he left no creditors and no will; that she herself, the mother of said deceased, "residing in said city of Portland," two minor half-sisters, who "reside with your petitioner in said city," and a minor brother, residing in Cambridge, Vermont, were the only next of kin and heirs at law of the said intestate. The petition alleges all other jurisdictional and necessary facts and in said petition petitioner expressly renounced her right to administer upon the estate of deceased, and prayed the court to grant letters of administration to H. W. Davis, whom she alleged to be a fit and competent person to administer upon said estate. Acting upon said petition, the county court of Multnomah county, at a regular term of said court, on December 16, 1878, in an order made and entered in the records, in which it was recited that it was "proved by the oath of the petitioner, Riggs, that the said William A. Perkins died on or about the sixteenth day of November, 1878, intestate, in the county of Multnomah and state of Oregon, being, at or immediately before his death, an inhabitant of said county," etc., ordered that letters of administration on the estate of said intestate be issued to H. W. Davis; and letters were accordingly issued, and said Davis qualified and entered upon his duties as such administrator—the proceedings being all in due form and regular upon their face. The said order and appointment are still unrevoked and in full force. Afterwards, on January 2, 1879, said Davis, as such administrator, brought an action at law against the defendant in the circuit court of Oregon, under section 637 of the Code of Oregon, for the identical cause of action alleged in the libel herein, in which issue was joined, and in which there was a trial by jury and a verdict in favor of the defendant, upon which verdict a final judgment was regularly entered on March 31, 1879. Said judgment was afterwards duly affirmed, on appeal, by the supreme court of Oregon, on August 11, 1879; and it still remains in full force and effect. Afterwards, Sidney Dell, who had been the attorney of Mrs. Riggs and said administrator, Davis, in the said prior proceedings, filed a petition, as petitioner, in the county court of Jackson county, Oregon, in which it is alleged "that deceased was, at and immediately before his death, an inhabitant of said county of Jackson, in said state of Oregon;" that the same parties mentioned in the said prior petition were next of kin and heirs at law, etc.; that the said cause of action was the only estate of deceased; that there were no creditors; that more than 40 days had elapsed since the death of the intestate, and neither the widow, next of kin, nor any creditor had "made application within that time to this court for letters of administration," and praying that Leander Holmes be appointed administrator, whereupon said Holmes was appointed such administrator on September 17, 1879. Holmes, having qualified and received his letters, filed the libel in this suit for the identical cause of action brought by Davis, administrator, in the state court. In addition to the issue taken on the case made by the libel, the defendant sets up as defences—*First*, that libellant was never administrator; *second*, the prior adjudication in the state courts. At the hearing at the last term, although the court intimated that its impressions were against the libellant upon other points, the case was in fact decided upon the first point named—that the libellant was never administrator. This point has

been thoroughly and ably argued and reargued, and I have given it that careful consideration which the importance of the case, and of the principle involved, deserve.

Whether the libellant is administrator depends upon the question whether the appointment of Davis, who was appointed by the county court of Multnomah county, and whose appointment, if legal, was still in force, was valid; and if not, then whether the intestate was in fact an inhabitant of Jackson county "at or immediately before his death." As to the first point, the appointment of an administrator of an estate, while there is already a legal administrator, is void. The title to all the estate having already vested in the existing administrator for the purposes of administration, there is no estate in existence which can vest in the second appointee by virtue of his appointment. There is no subject-matter upon which he can act. *Griffith* v. *Frazier,* 8 Cranch, 9; *Kane* v. *Paul,* 14 Pet. 33; *Haynes* v. *Meeks,* 20 Cal. 288; *Hamilton's Estate,* 34 Cal. 464.

Was Davis, then, administrator at the time of libellant's appointment? The only ground of invalidity in the appointment of Davis, alleged and relied on by libellant, is that Perkins, "at or immediately before his death," was not in fact an inhabitant of Multnomah county, and the county court of that county had no jurisdiction to make the appointment, and it is insisted that the appointment, for that reason, is absolutely void.

The first point to be considered, then, is, is the question of inhabitancy open to examination on a collateral attack? Section 1, art. 7, of the constitution of Oregon, so far as it relates to county courts, is in the following language: "The judicial power of the court shall be vested in a supreme court, circuit court, and *county courts, which shall be courts of record,* having *general* jurisdiction, to be defined, limited, and regulated by law in accordance with this constitution." Gen. Laws Or. p. 87. Thus the people of Oregon, in their fundamental law, have relieved the county courts of the badge of inferiority, in the technical sense of that term, and made them courts of record,—superior courts,—and so far as the sanctity of their determinations, and the faith and credit due to their records are concerned, placed them upon a plane of equal dignity with the circuit and supreme courts. The general jurisdiction is conferred, and the character of the court fixed in the same section and in the same language as that which fixes the *status* of the other courts. The same effect must, therefore, be given to their determinations upon collateral attack, and the same inviolability attributed to their records as to the records of the circuit

courts, or of the supreme court itself. This point is also settled by the decision of the supreme court of Oregon. *Tustin* v. *Gaunt*, 4 Or. 306. The character and dignity of the county court having been thus defined and established, section 12, of the same article of the constitution, provides that "the county court shall have the jurisdiction pertaining to probate courts," etc., thus conferring, in general terms, upon the county court general jurisdiction over the subject-matter of the estates of deceased persons. In regulating the exercise of this general jurisdiction thus conferred, in pursuance of the provisions of section 1, art. 7, of the constitution before cited, the statute provides that the administration of the estate of an intestate shall be granted by the county court when the intestate, "at or immediately before his death, was an inhabitant of the county, in whatever place he may have died." Or. Civ. Code, §§ 1051, 1052. Section 1060 provides, "in an application * * * for the appointment of an administrator, the petition shall set forth the facts necessary to give the court jurisdiction." In this case, as has been seen, the facts were all properly set forth, and it was distinctly alleged in the petition that the intestate was, "at or immediately before his death, an inhabitant of Multnomah county." This averment presented the issue as to inhabitancy to be determined, and the court did in fact determine and adjudge it upon evidence under oath, and its judgment on its face contains the recital: "It being proved by the oath of the petitioner, Riggs, that the said William A. Perkins died on or about the sixteenth day of November, 1878, intestate, in the county of Multnomah and state of Oregon, *being at or immediately before his death an inhabitant of said county.*" Can this determination be re-examined in a collateral proceeding, and if found erroneous treated as a nullity, on the ground that the court was without jurisdiction? To resolve this question it must be determined what jurisdiction is. The supreme court of the United States has repeatedly defined jurisdiction. In *Grignon's Lessees* v. *Astor*, 2 How. 338, the supreme court, quoting from a prior case, says:

"The power to hear and determine a cause is jurisdiction; it is *coram judice* whenever a case is presented which brings this power into action. If the petitioner presents such a case in his petition that, on a demurrer, the court would render a judgment in his favor, it is an undoubted case of jurisdiction. Whether, on an answer denying and putting in issue the allegations of the petition, the petitioner makes out his case, is the exercise of jurisdiction, conferred by the filing of a petition containing all the requisites, and in the manner required by law. 6 Pet. 709. Any movement by a court is necessarily the exercise of jurisdiction; so, to exercise any judicial power over the subject-

matter and the parties, the question is whether, on the case before a court, their action is judicial or extrajudicial, with or without authority of law, to render a judgment or decree upon the rights of the litigant parties. If the law confers the power to render a judgment or decree, then the court has jurisdiction what shall be adjudged or decreed between the parties, and with which is the right of the case, is judicial action by hearing and determining it. 12 Pet. 718; 3 Pet. 205. It is a case of judicial cognizance, and the proceeding is judicial. 12 Pet. 623."

The court further says:

"No other requisites to the jurisdiction of the county court are prescribed than the death of Grignon, the insufficiency of his personal estate to pay his debts, and a representation thereof to the county court where he dwelt, or his real estate was situate, making these facts to appear to the court. Their decision was the exercise of jurisdiction, which was conferred by the representation; for whenever that was before the court, they must hear and determine whether it was true or not. It was a subject upon which there might be judicial action. The record of the county court shows that there was a petition representing some facts by the administrator, who prayed an order of sale; that the court took these facts which were alleged in the petition into consideration and for these and divers other good reasons ordered that he be empowered to sell." Id. 339.

And again, (page 340:)

"The petition in the present case called for a decision of the court that the facts represented did or did not appear to them to be sufficiently proved. They decided that they did so appear, whereby their power was exercised by the authority of the law, and it became their duty to order the sale," etc. * * *

"The granting the license to sell is an adjudication upon all the facts necessary to give jurisdiction, and whether they existed or not is wholly immaterial, if no appeal is taken; the rule is the same whether the law gives an appeal or not,—if none is given from the final decree it is conclusive upon all whom it concerns. The record is absolute verity, to contradict which there can be no averment or evidence; the court having power to make the decree, it can be impeached only by fraud in the party who obtains it."

And again, quoting Chief Justice Marshall in *Ex parte Watkins,* 3 Pet. 204, 205:

"A judgment in its nature concludes the subject in which it is rendered, and pronounces the law of the case. The judgment of a court of record, whose jurisdiction is final, is as conclusive on all the world as a judgment of this court would be. It is as conclusive in this court as it is in other courts. *It puts an end to all inquiry into the fact by deciding it.*"

This definition of jurisdiction, and these views, have been reiterated and affirmed over and over again by the supreme court, and I am not aware that they have ever been modified or questioned. See *Ex parte Watkins,* 3 Pet. 205; *U. S.* v. *Arredondo,* 6 Pet. 709; *In re Bogart,* 2 Sawy. 401. The doctrine and the case of *Grignon's Lessees*

is affirmed in *Florentine* v. *Barton*, 2 Wall. 216, in which the court says:

"The petition of the administrator, setting forth that the personal property of the deceased is insufficient to pay such debts, and praying the court for an order of sale, brought the case fully within the jurisdiction of the court. It became a case of judicial cognizance, and the proceedings are judicial. The court has power over the subject-matter and the parties."

How did the court get jurisdiction? Not merely by the actual existence of the jurisdictional facts, but by their averment in the petition, and—

"The court having (by such representation) the right to decide every question which occurs in a cause, whether the decision is correct or otherwise, its judgment, until reversed, is binding on every other court. Id. * * * This proposition will be found fully discussed at length, and fully decided by us, in *Grignon's Lessees* v. *Astor*. Any further argument in vindication of them would be superfluous." Id.

Affirmed again in *Comstock* v. *Crawford*, 3 Wall. 403, 406. See, also, *Caujolle* v. *Ferrie*, 13 Wall. 465; *McNitt* v. *Turner*, 16 Wall. 363, 366. In the very late case of *Mohr* v. *Manierre*, 101 U. S. 424–5, the supreme court, by Mr. Justice Field, citing *Grignon's Lessees*, says:

"This court, however, held that no other requisites to the jurisdiction of the county court were prescribed by the statute than the death of the intestate, the insufficiency of his personal estate to pay his debts, and a representation of the facts to the county court where he dwelt or his real estate was situated; that the decision of the county court upon the facts was the exercise of jurisdiction which the representation conferred; and that the decision could not be collaterally attacked by reason of them. The court observed in substance * * * that it was sufficient to call its powers into exercise; that the petition stated the fact upon the existence of which the law authorized this sale; that the granting of the license was an adjudication that such facts existed," etc.

And again:

"The statute declared that upon the existence of certain facts the sale of the lunatic's estate might be made, and when these appeared in the petition of the guardian, the court had jurisdiction to act, so far as his rights were concerned, as fully as if the statute has so declared in terms, whatever may be the effect of its proceedings upon the interests of parties not properly brought before the court." Id. 426.

Thus, in that case, the principle so often repeated is again recognized and asserted, that when the jurisdictional facts are alleged in the petition, the court has jurisdiction to act upon them; that the determination of the truth or falsity of those facts is judicial action,

in the exercise of jurisdiction, and is conclusive when brought collaterally before another court.

Try the case under consideration by the tests thus repeatedly laid down, and reasserted and reaffirmed over and over again by the supreme court for a period of more than 50 years. Did not the "petitioner present such a case in her petition that on demurrer the court would render judgment in her favor?" There can be but one answer to this question. Then, says the supreme court "it was an undoubted case of jurisdiction." Was the court required to act upon the petition? Then, "any movement of the court" in acting upon it was "the exercise of jurisdiction." The law, as we have seen, required a petition stating the jurisdictional facts to be presented to the court, and required the court to act upon it. The proper representation of the fact of inhabitancy in the petition is strictly jurisdictional; the actual existence of the fact, jurisdictional only *sub modo*. The determination of the truth of the representation depends upon evidence and the exercise of jurisdiction. See *Haggart v. Morgan*, 5 N. Y. 429. The petition filed in this case represented all the jurisdictional facts.

"The decision upon it," says the supreme court, was the exercise of jurisdiction which was conferred by the representation;" for "whenever that was before the court they must determine whether it was true or not." "It was a subject upon which there might be judicial action." The determination and granting letters—

"Is an adjudication upon all the facts necessary to give jurisdiction, and whether they existed or not is wholly immaterial if no appeal is taken. The rule is the same, whether the law gives an appeal or not. If none is given from the final decree it is conclusive on all whom it may concern. The record is absolute verity, to contradict which there can be no averment or evidence; the court having power to make the decree, it can be impeached only by fraud in the party who obtained it." 2 How. 340.

The court certainly had power, because it was required to do so, to act upon the petition of Mrs. Riggs, and determine the truth of the matters alleged, and to make a decree to give effect to that determination. Otherwise, to what end is it to consider the petition at all? And in the language of Chief Justice Marshall, "the judgment in its nature concludes the subject on which it is rendered, and pronounces the law of the case. The judgment of a court of record, whose jurisdiction is final, is as conclusive on all the world as the judgment of this court would be. * * * It puts an end to all inquiry into the fact by deciding it." Those are the conditions found in this case,

and such must be the result unless the law, as it has been recognized and enforced in the supreme court of the United States for more than half a century, is to be abrogated. The court certainly was authorized to adjudge and decree whether, upon the petition and proofs, Perkins was or was not an inhabitant of Multnomah county at or immediately preceding his death. It was required by the statute to determine that question. No court in the state could act at all in such a case without making this inquiry. No court could know how the actual fact was by intuition, or take judicial notice of it. There must be proper allegations and proof, which the court must consider; and the inquiry must, in the nature of things, rest on antecedent authority. That authority is jurisdiction, and the inquiry judicial action within the jurisdiction. The correct determination of the fact depends upon the truthfulness of the evidence and correct deductions from it; and in both particulars there is liability to error. It seldom happens that disputed facts can be determined with absolute certainty. The evidence upon different trials of the same issues of fact may be entirely different, and not only justify but absolutely require different determinations and different adjudications. Different minds may make different deductions from the same evidence, where there is room for doubt. But the peace and interests of society require that there should be an end to litigation. Hence the rule, as important to the well-being of society as any known to the law, that a question of fact once determined and adjudged by a court having authority to make the inquiry and adjudication, is conclusively determined unless the judgment is set aside on appeal to some higher court, or upon some direct proceeding within the recognized rules of law to annul it. In this case, in my judgment, the county court of Multnomah county had jurisdiction upon the petition filed and evidence, to inquire into, determine, and adjudge the fact of inhabitancy of Perkins at or immediately before his death; and having made the inquiry, and determined and adjudged the fact, the judgment is "conclusive on all the world," and "puts an end to the inquiry concerning the fact by deciding it." The petition for the appointment of an administrator, and the proceedings thereon, are in the nature of proceedings *in rem.* "All the world was a party" to the proceedings, and consequently all the world is estopped by the adjudication thereon. *Grignon's Lessees,* 2 How. 338.

The broad principle urged by libellant's counsel, that the question of Perkins' inhabitancy is strictly jurisdictional, and that all jurisdictional facts, notwithstanding they have been heard and determined

on proper allegations and evidence in the courts called upon to act in the matter, are still open to inquiry collaterally in the same or other courts, would render the adjudications of nearly all private cases in the national courts inconclusive and open to collateral attack. The national courts, while technically courts of record and superior courts, are yet courts of limited jurisdiction. This has been often so determined by the supreme court, and it is only necessary to read the constitution and statutes conferring jurisdiction to perceive it. In private cases the jurisdiction usually depends either upon the citizenship of the parties, or whether the case arises under the constitution and laws of the United States. In the former case the jurisdictional fact of citizenship must be alleged, and, if denied, proved. In the latter case there is often a difference of opinion as to whether the case arises under the constitution or laws of the United States. Are the questions of citizenship, and whether the case is one arising under the constitution and laws of the United States,—the jurisdictional facts,—when once adjudicated upon proper allegations and proofs, to be ever after open to examination and repeated re-examinations, at the pleasure of the parties, whenever they are brought collaterally before the same or other courts? They certainly are, if the libellant's proposition can be maintained, for they are jurisdictional facts in the same sense and precisely of the same kind of jurisdictional facts as the inhabitancy of Perkins. Citizenship, as a jurisdictional fact, is precisely similar to inhabitancy. They are established when controverted by similar evidence, and one is as easily proved as the other. To give the national courts jurisdiction, on the ground of citizenship, the opposing parties must be either citizens of different states, or one must be a citizen and the other an alien. Unless this condition exists the court has no jurisdiction, and the court in which the case is brought must necessarily determine for itself whether the jurisdictional fact exists or not. When this jurisdictional fact is alleged in the pleadings, established to the satisfaction of the court, and determined by it, its adjudication upon the fact is conclusive; and it has been so distinctly decided and settled by the supreme court of the United States in *Erwin* v. *Lowry,* 7 How. 180. I am not aware that the proposition has ever since been questioned. The supreme court has gone so far as to hold that in judgments of the circuit courts, being courts of record, this question cannot be collaterally raised upon a record which does not even aver the jurisdictional facts. *McCormick* v. *Sullivant,* 10 Wheat. 199; *Kennedy* v. *Bank of Georgia,* 8 How. 611, 612. See, also, *Skillern's Ex'r,*

v. *May's Ex'r*, 6 Cranch, 267; *Washington Bridge Co.* v. *Stewart*, 3 How. 424. It is also settled that the averment of citizenship can only be traversed by a plea in abatement to the jurisdiction. If not so controverted, it is deemed conclusively established. *Smith* v. *Kernochen*, 7 How. 216; *Jones* v. *League*, 18 How. 81; *De Sorby* v. *Nicholson*, 3 Wall. 423; *Evans* v. *Gee*, 11 Pet. 83; *Wickliffe* v. *Owings*, 17 How. 48; *P. W. & B. R. Co.* v. *Quigley*, 21 How. 214. Thus, unless a special plea to the jurisdiction putting in issue the allegation of the jurisdictional fact of citizenship is interposed, the jurisdictional fact is conclusively admitted on the record, whether it exists or not; and there can be no doubt that the adjudication upon that fact would be conclusive in all other courts in a collateral proceeding.

The place of the commission of all crimes is a jurisdictional fact which must be alleged in the indictment. The offence must be committed within the territorial jurisdiction of the court, or it cannot take cognizance of it. Section 22 of the Oregon Criminal Code (Gen. Laws, 343) provides that, with certain specified exceptions, "all criminal actions must be commenced and tried in the county where the crime was committed." The fact that the crime was committed within the county for which the court is held, is, then, a jurisdictional fact in the same sense as inhabitancy in the case of an intestate, except that the language in reference to crime as a jurisdictional fact is of a more mandatory character in form of expression. The indictment must allege this jurisdictional fact, and, if it is controverted, it must be proved. Will it be said, when this fact is alleged in an indictment, and proved to the satisfaction of the court and jury, that the adjudication thereon by the court is not conclusive, because it turns out that the offence was not in fact committed in the county, or at any other place within the territorial jurisdiction of the court? I apprehend not. Yet if there is error in the verdict on this point, the jurisdictional fact does not exist in the same sense that it is non-existent in the case of the inhabitancy of an intestate at or immediately before his death, when there has been an erroneous determination of the fact upon proper allegations and proof. In both cases the court was authorized and required, upon the pleadings and proofs, to inquire into and determine that fact. If the determination is conclusive in the one case it must be in the other. Suppose four or more counties corner together, as they well may, and a murder is committed at or near the common point in a state where the indictment must be found and tried in the county where the crime was committed, the evidence being conflicting as to the county in which the offence was

in fact committed, and the party charged is tried, found and adjudged guilty upon an indictment containing proper allegations of the jurisdictional facts, and hanged, are the judge and jury who tried the case, and the sheriff who executed the convicted prisoner,—I will not say murderers,—but guilty of taking the life of a citizen upon a proceeding absolutely void, and without the authority of law? ˙ Or, suppose the party charged is indicted and tried in the wrong county, and acquitted upon the sole ground that the homicide was committed in self-defence, can he be again indicted for the same offence in each of the four or more other counties, and acquitted on the same ground, until the last, which is in fact the proper county, and there convicted and hanged? Such might be the result if the jurisdictional fact is not conclusively determined in the first case, and the judgment therein is void for want of jurisdiction. On a second indictment in another county, the plea of former acquittal would not avail if the court had no jurisdiction to try the case. If the judgment is void for one purpose on that ground, it must be void for all. The party charged would not be twice in jeopardy, for he cannot be in legal jeopardy when the court has no jurisdiction to act in the case, and its action is a nullity. Void things are as no things. A conviction on an insufficient indictment is not a bar to a second indictment, because on an insufficient indictment the party is not in jeopardy. *U. S.* v. *Gibert*, 2 Sumn. 39; Whart. Crim. Pl. & Pr. (8th Ed.) § 507. So, also, there is no jeopardy when the jury is discharged without rendering a verdict for sufficient cause, as death or insanity of a juror, or where it is impossible for the jury to agree. *U. S.* v. *Perez*, 9 Wheat. 579; *U. S.* v. *Haskell*, 4 Wash. 410. In the *Vaux Case*, 2 Coke, Rep. 388, the court held—

"That the reason of *autrefois acquit* was because where the maxim of the common law is that the life of a man shall not be twice put in jeopardy for one and the same offence, [and that is the reason and cause why *autrefois* acquitted or convicted of the same offence is a good plea,] yet it is intended of a lawful acquittal or conviction, for if the conviction or acquittal is not lawful his life was never in jeopardy. 2 Sumn. 41. If it is not lawful to convict a man on an insufficient indictment, and for that reason the party so convicted is not in jeopardy, it is certainly not lawful to convict him by a court that has no jurisdiction to try the case, and whose judgment can be set aside as collaterally void; and a conviction by such a court cannot put the person in jeopardy. The close of the term of the court, under the statute, pending a trial, also justifies a discharge of a jury, and the party is not in jeopardy, because a continuance of the trial after the close of the term would be unlawful. The court has no authority to proceed. Its judgment would be unlawful, and the party not put in jeopardy. Whart. Crim. Pl. & Pr. § 513. *A for-*

*tiori* a judgment of a court without jurisdiction would be void, and there would be no jeopardy. Repeated indictments and trials in different counties, under the circumstances I have suggested, would be absolutely monstrous; yet evidence may be had at one time that cannot be got at another. The proofs may be entirely different on different trials, and the verdict on each trial justified by the evidence on that trial, though the verdicts on the several trials may be different. There can be but one safe and logical rule on this point applicable to the class of jurisdictional facts referred to, and that is, where the petition, complaint, bill, or indictment alleges the jurisdictional facts, and the court is authorized and required, upon the allegations and proofs, or admissions of the pleadings, to determine the truth of the allegations, it has power to give effect to its determination by its judgment or decree, and, having power to thus determine, adjudge, and decree, its adjudication is conclusive."

This very case presents a striking illustration of the necessity of the rule making similar determinations conclusive. On the death of Perkins, his mother, who was next of kin and one of his heirs at law, and the one to whom the law gave the first right to administer, filed her petition in the county court of Multnomah county, alleging that deceased was an inhabitant of Multnomah county at or immediately before his death, and the court, upon the petition and satisfactory evidence, so adjudged, and upon her request issued letters of administration to Davis. Davis immediately brought an action in the state court for the cause of action set up in the libel, and there was a jury trial, verdict, and judgment against him, which judgment was affirmed on appeal by the supreme court.

A stranger, then, acting upon the theory that the proceedings in Multnomah county are void for want of jurisdiction, on the ground that Perkins was not an inhabitant of that county at or immediately before his death, but a resident of Jackson county, filed a petition in the county court of the latter county alleging the jurisdictional facts, and thereupon the county court of that county issued letters of administration to libellant, who commenced this suit. The petition in the latter case does not allege that no letters of administration had been issued, but only that "no application has been filed in this court,"—the county court of Jackson county,—leaving it to be inferred that administration may have been had elsewhere. Upon the trial of this case in the court below, the district judge was of the opinion that Perkins, at or immediately before his death, was not in fact an inhabitant of either Multnomah or Jackson county, but of Marion county. I have read the evidence, and I am strongly inclined to think that deceased was not an inhabitant of Jackson county at or immediately before his death; but I do not decide that point, for the

reason that the case was submitted on the question of the conclusiveness of the proceedings in Multnomah county, and the question of inhabitancy was not argued, and it is not necessary to determine the fact on this petition for rehearing. I merely refer to the point for the purpose of illustration. If I should hold the proceedings in question inconclusive, and then, as I probably should, also find that Perkins was not an inhabitant of Jackson county at the time required, and decide the case against libellant on that ground, then some other stranger, moved by the parties in interest, might file a petition in the county court of Douglas county, where the defendant stopped a month after he left Jackson county, procure the appointment of another administrator, and go through with a third suit to the supreme court, and upon failure therein, on the same grounds, repeat the process in Marion county. Such repetitions of the litigation in the forums chosen by the parties in interest would, in my judgment, be to the last degree vexatious, and a law permitting it intolerable. The cases already cited from the supreme court, as I think, establish the principle that controls the decision of this case. But there are also numerous cases in the state courts to the same effect, and some of them determine the exact point. The precise point was presented and decided in favor of the conclusiveness of the judgment appointing an administrator by the supreme court of California in *Irwin* v. *Scriber*, 18 Cal. 500, and that case has been frequently affirmed in that state. *Rogers* v. *King*, 22 Cal. 72; *Warfield's Will*, 22 Cal. 51.

In *Lucas* v. *Todd*, 28 Cal. 185, 186, the court says: "The petition of the plaintiff for letters of administration *de bonis non* states all the jurisdictional facts and gave the court jurisdiction of the case."

The rule with reference to other jurisdictional facts is definitely stated by Chief Justice Field, now a justice of the supreme court of the United States, in *Haynes* v. *Meeks*, 20 Cal. 313. After stating that a proceeding to sell land by an administrator is a distinct and independent proceeding in the nature of an action, of which the filing of the petition is the commencement and the order of sale the judgment, citing *Sprigg's Case*, 20 Cal. 121, he proceeds:

"We must, then, examine the petition to ascertain whether a case is presented by its averments, within the statute, upon which the court can act. And the petition must show upon its face two things: *First*, the insufficiency of the personal property to pay the debts and charges against the estate; and, *second*, the necessity of the sale of the real property, or some portion thereof. Both must appear before the court can take jurisdiction of the proceeding. The truth of the averments—their sufficiency appearing—is

matter which must be determined at the hearing of the petition, and the judgment of the court thereon, if rendered upon legal notice, cannot be questioned collaterally. It may be reviewed, and, if erroneous, corrected on appeal, but not otherwise." 20 Cal. 313.

If these jurisdictional facts, once so determined on proper allegations and proofs, cannot be afterwards questioned collaterally, why should not a similar determination of the fact of inhabitancy, also, be conclusive?· The same rule has, also, been established in many of the other states. See *Fisher* v. *Bassett*, 9 Leigh, 119; *Andrews* v. *Avory*, 4 Gratt. 229; *Abbott* v. *Coburn*, 28 Vt. 667; *Burdett* v. *Silsbee*, 15 Tex. 615; *Johnson* v. *Beazley*, 65 Mo. 264; *Bumsted* v. *Read*, 31 Barb. 664; *Bolton* v. *Brewster*, 32 Barb. 393. In Massachusetts a different view was taken in *Cutts* v. *Haskins*, 9 Mass. 547, but the character of the court does not appear, nor does it appear that there was any petition stating the jurisdictional facts. The court did pass upon the fact of residence, but it does not appear that the propriety of entering upon that inquiry was argued or ·decided, or even questioned. The editor of the Massachusetts Reports, in a note to the ·decision, calls attention to these points, and questions the decision on the ground that when the facts are averred in the petition, the determination should be conclusive. This case was afterwards followed in the same state in 5 Pick. 20, and 9 Pick. 259. But the great weight of authority, and, to my apprehension, the entire weight of reason, is the other way, and in favor of conclusiveness of the adjudication.

I should not have deemed it necessary to enter so fully into the discussion of the question, or to quote so largely from the authorities, had it not been for the case of *Thompson* v. *Whitman*, 18 Wall. 460, which libellant's counsel has cited, and pressed in the argument and petition for rehearing with unusual earnestness and zeal, as well as manifest confidence and sincerity, as being directly in point and controlling in this case. Did I suppose the supreme court intended in that decision to cover this case, I certainly should yield to its superior authority; but I cannot, after a full consideration of the case, satisfy myself that the supreme court designed the decision to be so far-reaching in its effects. It must be admitted that there is general language used in the opinion, which, considered by itself, lends some countenance to the view maintained by counsel. But if he is correct in the rule assumed to be established by that authority, then there is no jurisdictional fact that can be conclusively determined by any court under any circumstances, and in all the cases to

which I have referred the question of jurisdiction is open to examination and repeated re-examination, collaterally, as often as the record is presented, there could be no conclusive determination of any jurisdictional fact, and, certainly, none in any of the United States courts, depending upon citizenship of the parties, or upon the questions whether the case arises under the constitution and laws of the United States; and no conclusive determination of the jurisdictional facts alleged in an indictment for an offence, when the offence must be committed within the territorial jurisdiction of the court in which the indictment is found and tried. To give the decision the broad scope contended for, would be to overrule many cases deciding the principle upon which the conclusiveness of the adjudication rests in the same court, to which the court has not adverted in its decision. It cannot be supposed that it was the intention to overrule long-established principles without even mentioning the cases in which they were elaborately discussed and established. Besides, the doctrines of those cases, and the cases themselves by name, have been expressly reaffirmed since the decision in *Thompson* v. *Whitman*, and the case of *Grignon's Lessees* was cited and approved, and the principles established by it reaffirmed, as late as 101 U. S. 425–26. The case of *Thompson* v. *Whitman* did not call for a statement of principle so broad in its terms as some of the language used, and the language of a judicial opinion must be considered with reference to the case decided. There must be a line somewhere between disputable and conclusive adjudications of jurisdictional facts. Some, certainly, have been adjudged disputable, and others indisputable. The court says, in the case relied on: "It must be admitted that no decision has ever been made on the precise point" involved in that case. 18 Wall. 468. Then the court does not consider the "precise point" involved and decided in that case to be the same with any point decided in *Grignon's Lessees*, and therefore it cannot be the same as the point stated in this language:

"It is *coram judice* whenever a case is presented which brings this power into action. If the petitioner presents such a case in his petition that on a demurrer the court would render a judgment in his favor, it is an undoubted case of jurisdiction; whether on an answer denying and putting in issue the allegations of the petition, the petitioner makes out a case, is the exercise of jurisdiction conferred by the filing a petition containing all the requisites, and in the manner required by law."

That this and the further proposition, that the adjudication upon such a petition is conclusive, are points of the decision, was the

opinion of Mr. Justice Curtis, as is manifest from a consideration of the head-notes to the case in his edition of the supreme court reports; for he professed to limit his head-notes to the exact points considered and actually decided by the court. Nor did the court consider it precisely the same as that in *Comstock* v. *Crawford*, 3 Wall. 403; or as that in the very late case of *Mohr* v. *Manierre*, 101 U. S. 425. Nor the same point as that decided in *Erwin* v. *Lowry*, 7 How. 180, that the jurisdictional fact of citizenship determined in the national courts cannot be collaterally inquired into; that the determination of that jurisdictional fact is conclusive. The court, therefore, does not intend to touch these cases, nor the principles established by them.

Where, then, is the line of division? I apprehend it will be found by examining the case of *Thompson* v. *Whitman*, and the line of cases cited and commented on in that case, and comparing them with the other line of decisions cited in this decision, which were carefully avoided by the court in its opinion. It will be found, on such examination, that after a cause of action has arisen—after the cause of action is complete—something must always be done by the court, through its executive or ministerial officers, or somebody else on behalf of the court, to give the court jurisdiction, either of the person, or, in a proceeding *in rem*, of the thing; such as serving a summons in a cause at law, or subpœna in chancery, upon the person within the state, giving a notice in some prescribed place, mode, or form, or seizing the thing. To get jurisdiction of the person, he must not only be served with process, but he must be served within the territorial jurisdiction of the court, as within the same state. In such case service within the state is the jurisdictional fact to be performed by, and upon the authority of, the court, through its ministerial officers, or other agencies of the court appointed by law. In some states, as in New York, the service may be by private parties; but they act by the authority and on behalf of the court. In matters *in rem* there must be a *seizure*, and often some notice given to the parties in interest by the court in some prescribed mode. In such cases the seizure and notice are jurisdictional facts subsequent to, and wholly independent of, the cause of action, and of all pre-existing jurisdictional facts not depending upon the action of the court or its appointed agencies. In *Thompson* v. *Whitman* the offence was complete when the vessel engaged in gathering oysters within the waters of New Jersey contrary to the statutes of that state. But the cause of action and forfeiture being complete, it was necessary to seize the

vessel within the boundaries of the county over which the court had jurisdiction, to give jurisdiction to the court. The seizure within the county was the jurisdictional fact, and this was an act to be performed by the court, or, on its behalf, through the agencies appointed by law. The jurisdictional fact was an act to be performed to get jurisdiction of the thing, in all respects analogous to the service of summons within the state in order to acquire jurisdiction of the person, or the levy of an attachment upon the property in an attachment suit in order to get jurisdiction of the property. And this is the class of cases cited as authorities and commented on by the court in *Thompson* v. *Whitman*; and those acts to be performed by or on behalf of the court, in order to acquire jurisdiction of the person or thing, the class of jurisdictional facts that may be questioned collaterally under this authority and those cited, even though the court must have passed upon those facts. *Webster* v. *Reid*, 11 How. 456; *D'Arcy* v. *Ketchum*, 11 How. 172; *Harris* v. *Hardeman*, 14 How. 334; *Knowles* v. *Gas-light Co.* 19 Wall. 61; *Pennoyer* v. *Neff*, 95 U. S. 714; and *Thompson* v. *Whitman*, are fair examples of this class. So, also, where it is only necessary to compare the record with the law, to see that the record shows a want of jurisdiction on its face, the record is not conclusive. In such cases there is no re-examination of issues of fact determined in the case. Such a case is *Elliot* v. *Piersol*, cited by the court. Whenever the court undertakes to acquire jurisdiction over parties or things, through the acts of officers or other lawfully-appointed agencies, performed by its authority or on its behalf, it must see that the proper acts have been duly performed; and whether they have been performed or not, under the decision referred to, may be inquired into collateraly.

But there is another class of cases where there is a complete cause of action or proceeding existing, and the parties interested present all the facts—the necessary pre-existing jurisdictional facts, as well as the others constituting the cause of action—by alleging them in a petition, complaint, bill, or, in the case of the state, in an indictment or other proper pleading, and ask an adjudication upon them; and when the opposing party has had due notice by proper proceedings, to acquire jurisdiction of the person, the court is required to act upon the allegations and proofs, and determine the facts. The action of the court in determining the facts in such cases, the court having properly performed its part to get jurisdiction of the person or the thing, is the exercise of jurisdiction; and the determination and adjudication upon the allegations and proofs of the facts upon which the

court is so required to act, is conclusive upon a collateral attack, and I understand the authorities cited in this opinion to sustain that proposition, even though some of the pre-existing facts alleged are of a jurisdictional character. If the line thus indicated in these two classes of decisions is not the true one between disputable and conclusive determinations and adjudications of jurisdictional facts —and there must be some line—then I confess I am not able to say where it should be drawn, and I shall leave it to the supreme court, when a proper occasion arises, to definitely and sharply locate it. If the line between inconclusive and conclusive adjudications of jurisdictional facts is to be further advanced in the direction of the latter, I shall leave it to that tribunal to make the advance. I certainly shall not be the one to take the first step. If, however, the supreme court should make the advance, I shall obediently follow, but I fear with "unequal,"—*non passibus æquis,*—certainly with reluctant steps. In my judgment the community ought to be entitled to rely with some confidence upon the solemn adjudications of the superior courts of the country, and I, for one, am unwilling to take the lead in judicial action that must, in the nature of things, largely exaggerate that very general lack of confidence in the sanctity, inviolability, and validity of the judicial records of even our superior courts, which it is notorious now so widely prevails, largely depreciating the value of all titles to property resting upon judicial sales and proceedings, at least on this side of the continent.

Counsel cites section 766, clause 16, of the Oregon Civil Code, relating to disputable presumptions, as controlling the case. The only observation I have to make upon that provision of the statute is that this is not a case of presumption, but of an actual adjudication of a fact upon proper allegations and proofs—a case of *res adjudicata.*

I regret that there is no appeal, as the point involved is one that ought to be authoritatively determined, and the question forever set at rest. But the statute expressly limits the recovery in such cases to $5,000, and that sum is, therefore, the utmost amount that can be in controversy. Or. Civ. Code, § 367.

Upon the views expressed, the petition for rehearing must be denied, and it is so ordered.