Argued March 21, reversed with directions April 4, 1951

# ANDERSON, as Administrator, $v$. CLOUGH et al.
### 230 P. 2d 204

*Allan G. Carson,* of Salem, argued the cause for appellant. With him on the brief were Wallace P. Carson and Ralph W. Skopil, of Salem.

*Asa L. Lewelling,* of Salem, argued the cause and filed a brief for respondents.

Before BRAND, Chief Justice, and HAY, LATOURETTE, WARNER and TOOZE, Justices.

TOOZE, J.

This is an action for damages for the death of Pedro Guerrero Cabral, plaintiff's intestate, resulting from the alleged negligent operation by defendants of a motor vehicle. The defense of contributory negligence was interposed, as well as other defenses hereafter noted. The case was tried to a jury, resulting in a verdict in favor of plaintiff for $5,000. On motion, the trial court set aside the verdict and entered judgment for defendants notwithstanding the verdict. Plaintiff appeals.

Immediately prior to and at the time of the accident involved here, defendants Troy D. Wood and

Robert A. Clark were engaged in the taxicab business at Salem, Oregon, under the firm name of "Salem Taxi Service," and defendant Lloyd L. Clough was in their employ as a taxicab driver and was operating a taxicab on the business of his employers.

The accident occurred May 21, 1944, at about the hour of 2:20 a. m. on highway 51, a public highway of the state of Oregon, located in Polk county. Highway 51 runs in a general northerly and southerly direction between the city of Independence and its intersection with highway 22, another public highway of the state, which latter highway runs in a general easterly and westerly direction between Salem and Dallas. A short distance south of the intersection of highways 51 and 22, highway 51 is crossed by the tracks of the Southern Pacific railroad. Highway 51 is paved with nonskid macadam, is 20 feet 7 inches in width, and is marked with a yellow center stripe. On both the east and west sides of highway 51, and both north and south of the railroad crossing, there are gravel shoulders, but there are none at the crossing. At the time of the accident the pavement was dry.

Immediately prior to the accident decedent and a companion were walking in a northerly direction on their left-hand side (west side) of highway 51 and were immediately approaching said railroad crossing. At said time defendant Clough was operating a taxicab in a southerly direction on said highway 51 and was approaching the railroad crossing. At the same time another motor vehicle was approaching from the south. When about 60 feet from the crossing, Clough noted the presence of decedent on the highway. Before reaching the railroad, Clough set the brakes on the taxicab and skidded in a straight line to the crossing, where

he struck decedent, and then skidded sideways for some little distance south, sideswiping the automobile coming from the south. The over-all skid marks of the taxicab measured 76 feet in length. The decedent was thrown for a distance of 39 feet 10 inches. As a result of such collision, decedent suffered the injuries from which he died a few hours later in Salem. Defendant Clough claimed he was traveling at the rate of 30 to 35 miles per hour immediately prior to and at the time of the accident.

In his complaint, plaintiff alleged that Cabral died on May 21, 1944, leaving no will, and that "at and immediately before, his death, *said decedent was an inhabitant of Polk County, Oregon,* and left assets in said county, consisting, among other things, of the cause of action" alleged; he also alleged his appointment as administrator of the estate of the decedent by virtue of an order of the county court of Polk county of date May 1, 1946. He then alleged that decedent left surviving him his widow and three minor children, giving their names and ages, and that "this action is maintained for the benefit of said widow and dependents." He then charged certain specific acts of negligence on the part of defendants in the operation of said taxicab as the proximate cause of the accident and death of Cabral. (Italics ours.)

By their answer, defendants first denied all the allegations of the complaint except that Cabral was struck by an automobile operated by defendants, that he died on May 21, 1944, and left no will.

As a first affirmative answer and defense, defendants charged decedent with certain specific acts of contributory negligence.

As a second affirmative defense, defendants alleged that on November 4, 1944, by virtue of an order duly made and entered of record by the circuit court for Marion county, Oregon, one Claggett was duly appointed administrator of the estate of said Cabral; that said administrator made a claim for damages *on behalf of the estate* of said Cabral against defendants on account of the death of Cabral; that said claim was compromised and settled for the sum of $500; that the said court by order duly made and entered of record approved such settlement and directed that the administrator execute and deliver a release to defendants releasing and discharging "defendants herein from all liability and claims whatsoever arising *in favor of said estate*" by reason of said collision which caused the death of decedent; that the said administrator collected and received from defendants the sum of $500 "and made and executed a release *for and on behalf of the estate* of Pedro G. Cabral, deceased, in full settlement of any and all claims *which said estate* and the administrator thereof had, or might have, against defendants herein"; that this is the same claim upon which plaintiff brings action in the instant case; and "that said settlement constituted, was, and is, a full and complete compromise and settlement of any and all claims of whatsoever kind and nature mentioned in the complaint herein and all matters alleged in the complaint have been compromised, settled, and adjusted." (Italics ours.)

As a third affirmative defense, the defendants realleged their second defense and then further alleged that on April 20, 1946, the said circuit court for Marion county entered its decree of final settlement in said estate, a copy of which is attached to and made a part

of the answer. Defendants then alleged "that by and because of the matters aforesaid all matters presented and alleged by the complaint herein were adjudicated and finally settled and determined prior to the filing of the complaint in this cause."

By his reply, plaintiff denied all the allegations of new matter pleaded in defendants' answer.

 Before discussing the principal issues involved on this appeal, we will dispose of defendants' contention that under the evidence in this case decedent was guilty of contributory negligence as a matter of law. We have carefully examined the record, and viewing the evidence in the light most favorable to plaintiff, as we must do in this connection, we find there is substantial evidence from which the jury might well find defendants guilty of negligence in one or more respects as charged in the complaint, and that the matter of decedent's alleged contributory negligence was properly submitted to the jury for determination as a question of fact.

The only evidence offered by defendants was in support of their second and third affirmative defenses. On their behalf there were offered in evidence, and received over plaintiff's objections, certified copies of all papers filed and entered of record in the probate proceedings in the circuit court for Marion county, together with the original release executed and delivered by the administrator in those proceedings to the defendants for the consideration of $500 paid said administrator by defendants.

Immediately following the reception in evidence of their said exhibits, defendants rested; and plaintiff also having rested, defendants moved the court for a directed verdict in their favor on the grounds alleged

in their second and third defenses, and further that decedent was guilty of contributory negligence as a matter of law.

The trial court was of the opinion that the motion for a directed verdict should be granted, and so stated; but the court did, at the request of plaintiff, submit the case to the jury, with leave to defendants to move for judgment in their favor if the verdict was otherwise than would have been directed, all as provided by § 6-707, O.C.L.A., as amended by ch. 149, Oregon Laws, 1945.

In setting the verdict of the jury aside and rendering judgment for defendants, the capable and conscientious trial judge held that the proceedings in the circuit court of Marion county in the matter of the estate of Pedro G. Cabral, deceased, (and the release and discharge given defendants pursuant thereto) were final, conclusive, a complete defense in this action, and not subject to collateral attack.

As his first assignment of error, plaintiff contends that the trial court erred in receiving in evidence the certified copies of the proceedings in Marion county and the release. In this connection plaintiff contends that want of jurisdiction in the circuit court for Marion county in said probate proceedings appears upon the face of the record; therefore, the orders and decrees of said court in said proceedings were void and subject to collateral attack.

■ It is well established that county or circuit courts of this state, when acting in probate matters, are courts of general jurisdiction; and whenever their proceedings are called in question collaterally, they are entitled to all the legal presumptions pertaining to the records of courts of superior jurisdiction. *Wilson v.*

*Hendricks*, 164 Or. 486, 489, 102 P. 2d 714; *Woodburn Lodge v. Wilson et al.*, 148 Or. 150, 34 P. 2d 611; 49 C.J.S., Judgments, 803, § 407 (b), 842, § 425 (d).

■ In case of collateral attack on a judgment of a court of general jurisdiction, every reasonable presumption will be indulged in support of the regularity and validity of the judgment, and the orders and decrees of such tribunals are not subject to collateral attack except when the want of jurisdiction affirmatively appears upon the face of the record. *Wilson v. Hendricks*, supra; 49 C.J.S., Judgments, 831, § 425.

Plaintiff's attack upon the orders and decrees of the circuit court for Marion county is based upon the contention that it appears upon the face thereof that the court did not have jurisdiction in the premises in that there is no allegation or finding that "at or immediately before his death" decedent "was an inhabitant" of Marion county.

Section 19-206, O.C.L.A., in part provides:

"Proof of a will shall be taken by the county court as follows:

"(1) When the testator, *at or immediately before his death, was an inhabitant of the county,* in whatever place he may have died;" (Italics ours.)

Section 19-210, O.C.L.A., provides:

"Administration of the estate of an *intestate* shall be granted by the county court authorized to take proof of a will, as prescribed in section 19-206, in case such intestate had made a will. * * *" (Italics ours.)

■ Under the statute the only court having jurisdiction to probate an estate of a person dying intestate in a case of the kind now before us is the probate court of the particular county in which the decedent "at or

immediately before his death, was an inhabitant," *irrespective of the place where he may have died. Slate's Estate,* 40 Or. 349, 352, 68 P. 399; *Slate v. Henkle,* 45 Or. 430, 78 P. 325.

Section 19-203, O.C.L.A., provides:

"In an application to prove a will or for the appointment of an executor or administrator, the petition *shall set forth the facts necessary to give the court jurisdiction;* and also state whether the deceased left a will or not, and the names, age, and residence, so far as known, of his heirs." (Italics ours.)

■■ Under this statute it is necessary that the petition state the jurisdictional facts as a prerequisite to the probate of an estate, and among these jurisdictional facts is the residence of the decedent. *In re Rowe's Estate,* 172 Or. 293, 141 P. 2d 832; *In re Burke's Estate,* 66 Or. 252, 134 P. 11; *Moore v. Willamette T. & L. Co.,* 7 Or. 359. In view of the express requirement of this statute that the petition *shall* set forth the facts necessary to give the court jurisdiction, no presumptions can be indulged in to uphold jurisdiction where a petition fails to disclose such facts.

In *In re Rowe's Estate,* supra, at page 297, Mr. Justice HAY, speaking for the court, said:

"The finding of a county court, sitting in probate, upon the jurisdictional facts alleged in a petition for the appointment of an administrator, is a final judicial determination. Holmes v. Oregon & C. R. Co., 7 Sawy. 380, 9 F. 229, 232. *The single jurisdictional fact,* so far as the present case is concerned, *was that the decedent, at or immediately before his death, was an inhabitant of the county.* Sections 19-206 and 19-210, O.C.L.A." (Italics ours.)

In the petition for the appointment of an administrator filed in the circuit court for Marion county, amongst other things, it is alleged: "That Pedro G. Cabral departed this life in Salem, Marion County, Oregon, on the 21st day of May, 1944, and was, at the time of his death, *an inhabitant of the State of Oregon,* being a citizen of a foreign country, to-wit, Mexico." This is the only allegation in the petition respecting residence of the decedent. In the order appointing Claggett as administrator the circuit court made a finding as to residence in the identical words of the petition as above quoted, and no other finding as to residence. (Italics ours.)

Here is an affirmative finding on the face of the record that decedent was "an inhabitant of the State of Oregon," not "of Marion county." Under the plain mandate of § 19-203, O.C.L.A., it was absolutely essential to the jurisdiction of the court over the subject matter that the petition allege that "at or immediately before his death" decedent "was an inhabitant" of Marion county.

The situation is analogous to that of a complaint in a divorce suit which fails to allege continuous residence on the part of plaintiff within the state for one year immediately prior to the commencement of the suit. Such continuous residence on the part of plaintiff is necessary to his right to institute suit and is jurisdictional. § 9-910, O.C.L.A.

In *Holton v. Holton,* 64 Or. 290, 129 P. 532, this court had before it for consideration a complaint in divorce which contained no allegation as to *plaintiff's* residence, but it did contain the following: "that the *defendant* now is and for more than one year last past has been a resident, inhabitant, and domiciled within

the State of Oregon, and that such residence and inhabitancy has been actual, continuous, and *bona fide.*" (First italics ours.) The court, speaking through the late Mr. Justice BURNETT, at page 296, said:

"Jurisdiction over the subject-matter of a suit cannot be acquired by a mere amendment subsequent to the final submission of the cause. * * * So it is, in order to give a court authority to move affirmatively in a suit, it must first have jurisdiction over the subject-matter. *Its lack of jurisdiction having been apparent on the face of the record,* the court *in limine* ought to have refused to proceed further, and after decree when the matter was called to its attention, even informally, it ought to have swept it from its records * * *." (First italics ours.)

The significant part of the court's opinion is the statement that because of the failure of the complaint to allege the jurisdictional fact of plaintiff's residence, the trial court's "lack of jurisdiction" *appeared "on the face of the record."* And so in the case at bar, the failure of the petition to allege that decedent was an inhabitant of Marion county at or immediately before his death makes it appear "on the face of the record" that "the court lacked jurisdiction." (Italics ours.)

There is a very good reason why all jurisdictional facts should be set forth in a petition for the appointment of an administrator, an excellent example of the importance of which is offered by the instant case. These proceedings are usually taken ex parte and without notice to anyone until after an administrator has been appointed. Unless the petition on its face affirmatively shows that the court has jurisdiction, there is no way for the court to ascertain the facts pertaining thereto.

In the instant case there is no dispute about the facts as to the residence of decedent at and immediately before his death. He was an inhabitant of Polk county. He had come to Polk county from Mexico about six weeks before this accident and had been continuously employed in the hopyard of Williams & Thacker near Eola in Polk county, where he lived. Had the petition for probate in Marion county set forth this fact as to residence, instead of alleging generally that decedent was an inhabitant of the state of Oregon, it is obvious that the Marion county court would not have assumed jurisdiction.

■ Concluding, as we do, that the proceedings in Marion county were void for lack of jurisdiction appearing on the face of the record, it necessarily follows that the order authorizing and directing the compromise and settlement with defendants had no legal effect whatever and was not a defense to plaintiff's action herein.

The release and discharge given defendants was based upon this order of the circuit court for Marion county, and that order being void and of no effect, the release itself is of no effect. A river cannot rise above its source.

Defendants argue that inasmuch as the petition alleged decedent died in Marion county, this may be accepted as an allegation of residence in the county "at or immediately before his death," so that the orders and decrees of the court may be upheld as valid. But this argument entirely disregards the express provision of the statute that *the place where one died* is unimportant to jurisdiction. § 19-206, O.C.L.A.

In fairness to the very able counsel for defendants

in this litigation, we make note of the fact that he had nothing whatever to do with the probate proceedings in Marion county.

But irrespective of what has been said, there are additional reasons why this purported release and discharge should not be deemed a defense to plaintiff's action.

In the petition filed in Marion county it was alleged "that so far as petitioner has been able to learn, decedent left no heirs-at-law or next-of-kin." The fact of the matter is that he left a widow and three children as dependents. The order of the court authorizing and directing the settlement for $500 provided that that sum was to be accepted as full settlement of all claims *of the estate* of decedent, and the release was executed and delivered by the administrator in full settlement and satisfaction of all such claims *of the estate*.

Under the facts of this case the *estate* of decedent as such never had any claim or cause of action against defendants arising out of decedent's death, and, therefore, never had anything to compromise or settle with defendants.

A right of action for the wrongful death of a person is statutory. In this state it is governed by the provisions of § 8-903, O.C.L.A.

Section 8-903, O.C.L.A., provides:

"When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the former *for the benefit of the widow or widower and dependents and in case there is no widow or widower, or surviving dependents, then for the benefit of the estate of the deceased* may maintain an action at law therefor against the latter, if the former might have main-

tained an action, had he lived, against the latter, for an injury done by the same act or omission. * * *'' (Italics ours.)

■ Under this statute if any of the beneficiaries named therein are in existence, there is no statutory right of action for death by wrongful act for the benefit of the estate, the only recovery being for the named beneficiaries. *Hansen v. Hayes,* 175 Or. 358, 154 P. 2d 202.

■ In this case there was but one cause of action, and that in favor of the widow and children. No cause of action ever vested in the estate. It accrued to and was vested in the named beneficiaries immediately upon the death of decedent. The right to maintain the action is given the personal representative of decedent for the benefit of the dependents, but the cause of action belongs to the beneficiaries. *Ross v. Robinson,* 169 Or. 293, 316, 124 P. 2d 918, 128 P. 2d 956; *Chicago, Burlington, & Quincy Railroad Company v. Wells-Dickey Trust Co., Admr.,* 275 U. S. 161, 72 L. Ed. 216, 48 S. Ct. 73, 59 A.L.R. 758.

■ We need not decide here whether an administrator, in the absence of statutory authority, may settle a claim for damages growing out of the wrongful death of his intestate, without the consent of the beneficiaries, because in the Marion county proceedings the administrator did not assume to settle anything other than a claim alleged to have belonged to the estate. He in no way assumed to act on behalf of the widow and children of the decedent. Manifestly, a settlement made for and on behalf of an estate could not be deemed a settlement of a cause of action accruing for the benefit of named beneficiaries. In no event could the purported settlement made under the Marion

county proceedings bar the present action for and on behalf of the widow and minor children who, under the statute, are the beneficiaries. *Ellenberg, Admr., v. Arthur et al.,* 178 S. C. 490, 183 S. E. 306, 103, A.L.R. 437.

We note in passing that by virtue of the provisions of ch. 461, Oregon Laws, 1947, an administrator is now permitted to settle a claim for damages growing out of the wrongful death of his intestate without the consent of the beneficiaries, provided such settlement is approved by the probate court, but this statute was adopted after the proceedings in the instant case were had, and, therefore, it is not applicable here.

Any other ruling would open the doors to widespread fraud, because if the law were otherwise, through ex parte proceedings instituted by creditors or others in which the existence of dependents is not brought to the court's attention, quick settlements could be made wholly without regard to the interests of those for whose benefit the statute is designed and thus deprive the real parties in interest of their just rights. This would be unconscionable.

The judgment is reversed and the cause remanded with directions to enter judgment for plaintiff against defendants in the sum of $5,000, with interest thereon at the rate of 6 per cent per annum from June 16, 1949, and for plaintiff's costs and disbursements incurred in the lower court. *Gow v. Multnomah Hotel, Inc., et al.,* on motion for recall and modification of mandate, 191 Or. 45.